CARGILL, INCORPORATED,
Appellant (Defendant),

v.

MOUNTAIN CEMENT COMPANY,
Appellee (Plaintiff),

and

Salt Creek Welding, Appellee
(Third–Party Plaintiff).

SALT CREEK WELDING, a sole
proprietorship, Appellant (Third–
Party Plaintiff),

v.

CARGILL, INCORPORATED, Appellee
(Third–Party Defendant).

MOUNTAIN CEMENT COMPANY,
Appellant (Plaintiff),

v.

SALT CREEK WELDING; and Cargill
Incorporated, Appellees
(Defendants).

Nos. 94–53, 94–72, 94–79.

Supreme Court of Wyoming.

March 3, 1995.

Alan B. Minier, Brent R. Cohen, and Justin D. Cumming of Rothgerber, Appel, Powers & Johnson, Cheyenne, for Cargill, Inc.

David R. Nicholas, Philip A. Nicholas, Stephen N. Goodrich, and Jeff Anthony of Nicholas Law Office, Laramie, for Mountain Cement Co.

James Richard McCarty and Keith P. Tyler, Casper, for Salt Creek Welding.

Before GOLDEN, C.J., and THOMAS, MACY, and TAYLOR, JJ., and KAUTZ, D.J.

TAYLOR, Justice.

In these consolidated appeals, we are asked to address theories of express and implied warranties arising out a jury verdict in favor of Mountain Cement Company and Salt Creek Welding and against Cargill Incorporated. The district court reduced the jury verdict by the amount Mountain Cement Company and Salt Creek Welding recovered from other defendants who settled prior to trial. These appeals require us to apply Wyoming's Uniform Commercial Code; review jury instructions, both given and refused; consider the denial of a request for further discovery; and consider the damages awarded.

## I.  ISSUES

In Appeal No. 94-53, Cargill Incorporated states the issues in the following manner:

A.  Did the trial court err by failing to order summary judgment or judgment as a matter of law against Mountain Cement Company and Salt Creek Welding on their warranty claims because, under the definitions found in the Uniform Commercial Code, Cargill was not a seller of the defective ⅝ inch steel plates?

B.  Did the trial court err by failing to order summary judgment or judgment as a matter of law against Mountain Cement Company and Salt Creek Welding because

the alleged contract was unenforceable against Cargill under the Statute of Frauds?

C. Did the trial court err when it gave Mountain Cement Company and Salt Creek Welding, two parties with common interests, four peremptory challenges each, for a total of eight, while Cargill was only given four?

D. Did the trial court err when it instructed the jury. Specifically:

1. Did the trial court err by refusing to instruct the jury on intervening causation?

2. Did the trial court err by instructing the jury on delegation of performance under the Uniform Commercial Code?

E. Did the trial court abuse its discretion by denying Cargill an opportunity for further discovery when Mountain Cement shifted its damage case after the discovery cutoff and again during trial?

In Appeal No. 94–53, Mountain Cement Company states the issues:

A. Is there sufficient evidence in the record to support the jury's finding that Cargill, Incorporated sold ⅝ inch steel plate to Salt Creek and breached an express warranty and/or implied warranty for the sale of the steel plate?

B. Is there sufficient evidence in the record to support the jury's finding that Cargill, Incorporated failed to establish its affirmative defense that an express warranty and/or implied warranty could not be enforced because of the statute of frauds?

C. Did the Trial Court abuse its discretion by granting Cargill, Incorporated, Mountain Cement Company, and Salt Creek Welding each 3 peremptory challenges and an additional peremptory challenge to each for the alternate jurors? And, if it did abuse its discretion, was it reversible error?

D. Was the jury confused or misled with respect to the applicable law by the Trial Court's refusal to grant appellant's instruction on intervening causation and its granting [of] Salt Creek Welding's instruction on delegation under the Uniform Commercial Code?

E. Did the Trial Court abuse its discretion by (1) denying Cargill, Incorporated an opportunity to take the deposition of Mountain Cement Company's damage witnesses for a second time, or (2) allowing Mountain Cement Company's damage experts to testify at trial?

Salt Creek Welding agrees with the issues presented by Cargill Incorporated in Appeal No. 94–53.

In Appeal No. 94–79, Mountain Cement Company presents the following issues:

A. Did the Trial Court err by refusing to grant Mountain Cement Company interest on its property damage claims against defendants Salt Creek Welding and Cargill Incorporated?

B. Did the Trial Court err by granting defendant Cargill, Incorporated a set-off against the jury verdict for settlement payments paid by USX Corporation and Leeco Steel Products, Inc.?

C. If Cargill, Incorporated was entitled to a setoff, did the Trial Court err by deducting the entire amount of the settlement payments against the entire amount of the jury's verdict, when the settling parties did not pay damages for Mountain Cement Company's property damage or prejudgment interest on its property damage?

Cargill Incorporated presents the following issues in Appeal No. 94–79:

A. Did the trial court properly refuse to grant Mountain Cement prejudgment interest on its property damage claim against Cargill?

B. Following a case tried only on breach of warranty, did the trial court properly reduce the judgment by $4,930,-000 in settlement proceeds previously received by Mountain Cement?

In Appeal No. 94–72, Salt Creek Welding presents the following issue:

Whether the trial court erred in awarding Cargill a set-off in the amount of $70,-000 representing monies paid prior to trial by USX to Salt Creek for mental anguish.

Cargill Incorporated, states the issue in Appeal No. 93–72 as:

A. Following a case tried only on breach of warranty theories, did the trial court properly reduce the judgment by $70,000 in settlement proceeds previously received by Salt Creek Welding?

## II. FACTS

Salt Creek Welding (Salt Creek) contracted to build a steel silo for Mountain Cement Company (Mountain Cement). The silo walls were to be built from A36 steel plate. A36 steel is an industrial grade material often used to build steel silos.

Salt Creek contacted Charlie Mandry (Mandry), a salesman for Cargill, Incorporated (Cargill), and ordered A36 steel plate for use in constructing the Mountain Cement silo. Cargill did not have the steel in stock and Mandry arranged to have the steel delivered by a Tulsa, Oklahoma supplier, Steel Deck. Several plates of steel were non-conforming carbon .33 max. alloy plates. The non-conforming plates were supplied by Leeco and manufactured by USX. When carbon .33 max. alloy plates are welded in the same way A36 steel plates are welded, the alloy becomes very brittle. One of the brittle alloy plates in the Mountain Cement silo cracked and the silo collapsed.

Mountain Cement sued Salt Creek, Cargill, USX, Leeco, and Steel Deck. (Steel Deck and USX were identified as Does). Salt Creek filed a cross claim against Cargill, USX, and Leeco. Steel Deck defaulted. Prior to trial, Mountain Cement and Salt Creek settled with USX and Leeco and both were dismissed with prejudice. Salt Creek confessed judgment to Mountain Cement.

The matter was tried before a jury on breach of warranty theories. The jury returned a verdict in favor of Mountain Cement and Salt Creek and against Cargill. The district court set off the settlement proceeds against the jury awards. Cargill appeals the jury verdict and several rulings by the district court. Mountain Cement and Salt Creek appeal the decision to set off the settlement proceeds against their jury awards.

## III. DISCUSSION

### APPEAL NO. 94–53

Cargill argues that it is entitled to summary judgment or judgment as a matter of law. Specifically, Cargill argues it is not a seller for purposes of Wyo.Stat. § 34.1–2–103(a)(iv) (1991) and that the statute of frauds bars enforcement of any verbal contract between Cargill and Salt Creek. Cargill also challenges the district court's decision to allow Mountain Cement and Salt Creek to exercise separate peremptory challenges during jury selection; the jury instruction regarding delegation; the district court's refusal to give an instruction on intervening cause; and an order by the district court limiting discovery.

#### A. SUMMARY JUDGMENT

■ Whether the denial of a motion for summary judgment may be reviewed on appeal, following a trial on the merits, is an issue of first impression to this court. Before granting summary judgment, a court must determine whether there are any genuine issues of material fact in dispute and, if not, whether the moving party is entitled to judgment as a matter of law. *Roemer Oil Co. v. Aztec Gas & Oil Corp.*, 886 P.2d 259, 262 (Wyo.1994). This two-pronged analysis is inapplicable if a motion for summary judgment is denied and the case is heard on its merits. The first prong of summary judgment analysis is rendered moot when the trier of fact accepts a particular set of facts at trial.

■ When the "issue of material fact" prong of summary judgment analysis is removed, the only question that remains is whether the moving party is entitled to judgment as a matter of law. The proper procedural mechanism for challenging an adverse judgment, following a trial on the merits, is a motion for judgment as a matter of law. We hold that it is improper to review the denial of a motion for summary judgment following a trial on the merits. *Bigney v. Blanchard,* 430 A.2d 839, 842–43 (Me.1981). We will not consider Cargill's argument that it is entitled to summary judgment. The proper focus of

our analysis is on Cargill's motion for judgment as a matter of law.

### B. STANDARD OF REVIEW

■ A motion for judgment as a matter of law under W.R.C.P. 50, as amended in 1992, is procedurally identical to a motion for directed verdict under the former W.R.C.P. 50. Accordingly, our standard of review is identical. If the jury acted unreasonably, that is returned a verdict contrary to the one conclusion a reasonable jury could have reached, the district court may grant judgment as a matter of law. *Rhoades v. K–Mart Corp.*, 863 P.2d 626, 629 (Wyo.1993). If, however, there is more than one conclusion that reasonable jurors could reach, judgment as a matter of law is inappropriate. *Id.*

■ The decision to grant a motion for judgment as a matter of law is reviewed *de novo* and we will accord no deference to the district court's decision. *Vassos v. Roussalis*, 658 P.2d 1284, 1287 (Wyo.1983). We review the evidence in the light most favorable to the non-moving party and all reasonable and legitimate inferences that the jury may have drawn from that evidence will be respected. *Rhoades*, 863 P.2d at 629. Finally, we note that judgment as a matter of law should be granted cautiously and sparingly. *Id.* This standard will be applied to Cargill's legal claims.

### C. UNIFORM COMMERCIAL CODE

■ Cargill insists it is not a seller under Wyo.Stat. § 34.1–2–103(a)(iv) because it never held title to the defective steel plate. Cargill argues that if it is not a seller, it is not liable for any breach of express or implied warranties under the Uniform Commercial Code (UCC). This argument is flawed because the question of whether Cargill held title to the defective steel plate becomes irrelevant if Mandry acted as Cargill's agent in arranging the sale of the defective plate to Salt Creek. *See, Park County Implement Co. v. Craig*, 397 P.2d 800, 802–03 (Wyo.1964) (parties' rights under UCC not dependent on title).

The proper analysis focuses on whether a reasonable jury, properly instructed, could conclude that Mandry acted as Cargill's agent. *Rhoades*, 863 P.2d at 629. This issue is controlled by well-settled legal principles. A brief review of agency law will facilitate our analysis of this issue.

■ Whether an agency relationship exists and the scope of the agent's authority are questions of fact to be determined by the jury following proper instruction. *Henderson v. Coleman*, 19 Wyo. 183, 211–12, 115 P. 439, 445–46 (1911); *First Fidelity Bank, N.A. v. Government of Antigua & Barbuda–Permanent Mission*, 877 F.2d 189, 193 (2nd Cir.1989). An agent may possess actual or apparent authority and either may serve to bind the principal. *Ulen v. Knecttle*, 50 Wyo. 94, 103–04, 58 P.2d 446, 449 (1936).

■ Actual authority may be express or implied. *Id.* An agent has express actual authority to bind the principal when the principal, orally or in writing, specifically grants the agent the power to bind the principal. *Id.; United States v. Schaltenbrand*, 930 F.2d 1554, 1560 (11th Cir.), *cert. denied*, 502 U.S. 1005, 112 S.Ct. 640, 116 L.Ed.2d 658 (1991). Implied actual authority is established by the course of dealings between the parties and the circumstances surrounding the case. *Ulen*, 58 P.2d at 449.

■ Apparent authority is created when the principal holds the agent out as possessing the authority to bind the principal or when the principal allows the agent to claim such authority. *Id.* To bind the principal under a theory of apparent authority, a third party must establish personal knowledge of, and reliance on, the apparent authority of the agent. *Id.* In *Herbert Const. Co. v. Continental Ins. Co.*, 931 F.2d 989, 993–94 (2nd Cir.1991), the Second Circuit Court of Appeals articulated that test:

> To recover on this theory [apparent authority] the third party must establish two facts: (1) the principal "was responsible for the appearance of authority in the agent to conduct the transaction in question," *Ford, [v. Unity Hospital,]* 32 N.Y.2d [464,] at 473, 346 N.Y.S.2d [238] at 244, 299 N.E.2d [659] at 664 [ (1973) ] (citation omitted), and (2) the third party reasonably relied on the representations of the agent,

*Hallock, [v. State,]* 64 N.Y.2d [224,] at 231, 485 N.Y.S.2d [510,] at 513, 474 N.E.2d [1178,] at 1181 [ (1984) ].

This statement essentially modernizes our holding in *Ulen.* Apparent authority in agency cases will be determined according to this two-prong test.

We begin by noting that the jury in the appeals before us was properly instructed. Specifically, Jury Instruction No. 9 and Jury Instruction Nos. 16 through 21 fairly and accurately apprised the jury of the law that controlled their decision regarding the nature and extent of any agency relationship between Mandry and Cargill. Since the jury was properly instructed, our review is limited. We must determine whether there was only one conclusion that a reasonable jury could have reached and, more specifically, whether the jury in this case unreasonably failed to reach that conclusion. *Rhoades,* 863 P.2d at 629.

Mandry was hired by Cargill to work as an outside sales representative. Cargill authorized Mandry, in writing, to sell Cargill's products to Cargill's customers. To facilitate the sale of its products, Cargill provided Mandry with an office, a telephone and an expense account. Mandry was authorized by Cargill to take telephone orders for steel.

Salt Creek consistently placed verbal orders for steel with Cargill. Salt Creek bought steel from Cargill in this manner for years and many of these verbal orders were placed with Mandry. Cargill typically sold steel to customers by telephone and Mandry was authorized to do so as well.

Both the "actual authority" analysis and the "apparent authority" analysis make it clear that Mandry was Cargill's agent. It was perfectly reasonable, on these facts, for the jury to conclude that Mandry was Cargill's agent. Mandry was authorized, in writing, to sell Cargill's steel products. Further, the course of dealings between Mandry and Salt Creek established that both Mandry and Salt Creek believed that Cargill was bound by Mandry's agreement with Salt Creek. Under the express actual authority theory, or the implied actual authority theory, a reasonable jury could conclude that Mandry was Cargill's agent.

The same is true under an apparent authority theory. Cargill provided Mandry with a telephone, an expense account and office space. These facts indicate that Cargill intended to hold Mandry out as an agent who possessed the authority to bind Cargill. Further, Salt Creek reasonably relied on that apparent authority when it ordered steel from Cargill. Thus, both prongs of the apparent authority test are satisfied. *Ulen,* 58 P.2d at 449; *Herbert Const. Co.,* 931 F.2d at 993–94. Because a jury could, under either theory of agency, reasonably conclude that Mandry was Cargill's agent, Cargill was a seller under the UCC. As a merchant of goods of that kind under the UCC, Cargill is not entitled to judgment as a matter of law on the warranty claims. *See,* Wyo.Stat. § 34.1–2–314(a) (1991).

## D. STATUTE OF FRAUDS

■ Cargill argues that judgment as a matter of law must also be granted because the agreement between Mandry and Salt Creek was not reduced to writing, and therefore, violates the statute of frauds. Wyo. Stat. § 34.1–2–201 (1991). This argument lacks merit because the transaction falls within the scope of a statutory exception. Wyo.Stat. § 34.1–2–201 provides, in pertinent part:

(a) Except as otherwise provided in this section a contract for the sale of goods for the price of five hundred dollars ($500.00) or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent * * *.

\*      \*      \*      \*      \*      \*

(c) A contract which does not satisfy the requirements of subsection (a) but which is valid in other respects is enforceable:

\*      \*      \*      \*      \*      \*

(iii) With respect to goods for which payment has been made and accepted or

*which have been received and accepted* * * *.

(Emphasis added.)

Salt Creek received the steel plate from Steel Deck and paid Steel Deck for the steel plate. Cargill argues that the full performance exception to the UCC, Wyo.Stat. § 34.1–2–201(c)(iii), is inapplicable because a third party, Steel Deck, accepted payment for the steel plate. Cargill argues that because it never received payment for the steel from Salt Creek, there was no "acceptance" by Cargill, as required under Wyo.Stat. § 34.1–2–201(c)(iii), and that the verbal agreement between Mandry and Salt Creek is unenforceable.

This argument ignores the fact that Mandry, acting as Cargill's agent, arranged the sale and instructed Salt Creek to pay Steel Deck. Since Mandry was acting within the scope of his authority, the express authority to sell steel, Cargill is bound by Mandry's actions despite the fact that Mandry may have violated private instructions he received from Cargill. *Koon v. Sampson,* 61 Wyo. 498, 506, 159 P.2d 366, 369 (1945). Cargill is, therefore, bound by the contract Mandry executed with Salt Creek. Since Cargill's agent issued the directive, Cargill is bound by the result, the acceptance of payment by Steel Deck. The goods were received and payment was accepted. The full performance exception to the UCC is satisfied and there is no violation of the statute of frauds.

### E. PEREMPTORY CHALLENGES

■ Next, relying on *Wardell v. McMillan,* 844 P.2d 1052, 1061 (Wyo.1992), Cargill argues that the district court improperly allocated peremptory challenges during jury selection. *Wardell* involved the interpretation and application of Wyo.Stat. § 1–11–202 (1988), which states that "[i]n a trial of civil cases in the district courts of this state, each side is allowed three (3) peremptory challenges." [1]

In *Wardell,* this court held that when allocating peremptory challenges, a district court must determine whether, under the relevant circumstances, a good-faith controversy exists between multi-party defendants regarding factual issues that will be determined by the jury. *Wardell,* 844 P.2d at 1061. Cargill argues that there was not a good faith controversy between Mountain Cement and Salt Creek when this case went to trial and that the two should have been required to share one set of peremptory challenges.

Although *Wardell* provides some guidance, we must also look to W.R.C.P. 47(e), which provides:

(e) *Peremptory challenges.*—Each party shall be entitled to three peremptory challenges. Several defendants or several plaintiffs *may* be considered as a single party for the making of challenges or the court *may* allow additional peremptory challenges and permit them to be exercised separately or jointly.

(Amended November 30, 1992, effective February 25, 1993.) (Emphasis added.)

■ W.R.C.P. 47(e) is identical to its federal counterpart, F.R.C.P. 47(b) (28 U.S.C. § 1870 (1988)). In *Fedorchick v. Massey–Ferguson, Inc.,* 577 F.2d 856, 858 (3rd Cir. 1978), the Third Circuit Court of Appeals, in applying 28 U.S.C. § 1870, held that the allocation of peremptory challenges among multiple parties is discretionary. *Fedorchick* is persuasive authority. *Mehring v. State,* 860 P.2d 1101, 1107 (Wyo.1993). The permissive phrases in W.R.C.P. 47(e), "may be considered" and "may allow," support the conclusion that the application of the second sentence of the rule is discretionary. We hold that the standard of review applicable to the allocation of peremptory challenges under W.R.C.P. 47(e) is an abuse of discretion standard.

1. In addition to the three peremptory challenges allowed under Wyo.Stat. § 1–11–202 and W.R.C.P. 47(e), each party is entitled to an additional peremptory challenge if one or two alternate jurors are empaneled. *See,* W.R.C.P. 47(d) (amended November 30, 1992, effective February 25, 1993). The district court empaneled additional jurors in this case and awarded each party an additional peremptory challenge for use against those jurors. Thus, Mountain Cement and Salt Creek were each awarded four peremptory challenges for a total of eight and Cargill was awarded four.

Cargill's reliance upon *Wardell* is not entirely misplaced. Allocation of peremptory challenges, although resting within the sound discretion of the district court, still requires the district court to determine that a good faith controversy exists between multi-party litigants, be they plaintiffs or defendants, before peremptory challenges are awarded. This rule is intended to prevent multi-party litigants, on the same side, from stockpiling peremptory challenges if their interests are not antagonistic.

However, we need not determine whether the district court erred in the application of this rule. Cargill failed to indicate which jurors, if any, it would have opposed had the peremptory challenges been allocated differently, and thereby, failed to properly preserve the issue for appeal. *Wardell*, 844 P.2d at 1059; *Goldstein v. Kelleher*, 728 F.2d 32, 38 (1st Cir.), *cert. denied*, 469 U.S. 852, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984). In *Goldstein*, the First Circuit Court of Appeals held that a jury verdict will not be reversed, due to improper allocation of peremptory challenges, unless the challenging party can "point to some convincing indication in the record that if a further peremptory challenge had been allowed, [the party] meant to challenge one or more jurors." *Id.* at 38. *Goldstein*, like *Fedorchick*, is persuasive authority. *Mehring*, 860 P.2d at 1107.

The record in this case fails to reveal which jurors were excluded by Salt Creek or Mountain Cement but desired by Cargill. The record also fails to disclose which jurors, if any, Cargill would have challenged had it been allotted additional peremptory challenges. We hold that a jury verdict cannot be attacked on the basis of improper allocation of peremptory challenges absent some indication, on the record, of which jurors the challenging party opposed.

## F. JURY INSTRUCTIONS

■ Cargill challenges Jury Instruction No. 5, which stated:

A party may perform his duty through a delegate unless otherwise agreed or unless the other party has a substantial interest in having his original promisor perform or control the acts required by the contract.

No delegation of performance relieves the party delegating of any duty to perform or any liability for breach.

An instruction to the jury is proper if there is "evidence before a jury to which they may apply the rule of law given by the court in the instruction." *Anderson v. Louisiana–Pacific*, 859 P.2d 85, 88 (Wyo.1993). When reviewing jury instructions, "this Court considers whether the instructions, taken as a whole, adequately and clearly advise the jury of the applicable law." *Kemper Architects, P.C. v. McFall, Konkel & Kimball Consulting Engineers, Inc.*, 843 P.2d 1178, 1182 (Wyo.1992). The record must establish that substantial rights were affected by *an improper instruction* before this court will find reversible error. *Id.* at 1182.

There is evidence in the record from which the jury could conclude that Cargill, through its agent Mandry, delegated to Steel Deck the responsibility of delivering conforming steel plates to Salt Creek. We have already held that Mandry, acting as Cargill's agent, contracted to supply Salt Creek with the steel plate for the silo. Cargill did not have the steel plate required and, rather than lose the sale, Mandry asked Steel Deck to supply the steel. Steel Deck agreed to deliver conforming steel plate to Salt Creek. Mandry then called Salt Creek and informed Salt Creek that "we can deliver it * * * via a friend in Tulsa, Steel Deck."

Cargill had delivered steel to Salt Creek through a third-party supplier in the past. Cargill sourced steel through third-party suppliers when it did not have the steel in its inventory. Cargill admitted that it had the power to direct payment by a customer, in this case Salt Creek, to a third-party supplier. The evidence demonstrates that Cargill sanctioned the delivery of steel from third-party sources to its customers and directed its customers to pay those third-party sources for the steel. Cargill, through its agent Mandry, delegated the performance of the contract with Salt Creek to Steel Deck.

The challenged jury instruction was proper and was supported by substantial evidence in the record. The jury instructions as a whole adequately and clearly advised the jury of

the applicable law. *Kemper Architects, P.C.*, 843 P.2d at 1182. We find no reversible error.

Cargill next argues that the district court committed reversible error when it refused to instruct the jury that Mountain Cement, not Cargill, may have caused Salt Creek's damages. Specifically, Cargill argues that Mountain Cement's refusal to pay Salt Creek for poor welding work was the cause of Salt Creek's damages, not the defective steel. This argument lacks merit. The verdict form and Jury Instruction Nos. 30 through 33 properly informed the jury that damages were not to be awarded unless Cargill proximately caused those damages. The jury instructions, taken as a whole, adequately and clearly informed the jury of the applicable law. *Kemper Architects, P.C.*, 843 P.2d at 1182. We find no reversible error.

### G. Discovery

Finally, Cargill argues that the district court abused its discretion when it refused to allow Cargill to depose Mountain Cement's damage expert, Arthur Zunker (Zunker), a second time. The standard for reviewing a district court's denial of a discovery request is whether the district court abused its discretion. *Cubin v. Cubin*, 685 P.2d 680, 685 (Wyo.1984). "Abuse of discretion occurs when a court exceeds the bounds of reason or commits an error of law." *Combs v. Sherry–Combs*, 865 P.2d 50, 55 (Wyo.1993).

Cargill argues that its ability to defend against Mountain Cement's damage claims was impaired because it was not allowed to depose Zunker a second time. We disagree. Suit was filed on January 8, 1990. After almost three and one-half years of discovery, the district court ordered a discovery cut-off date of May 28, 1993. Zunker had been deposed earlier by a Texas law firm. On September 30, 1992, the district court ordered Mountain Cement to deliver that deposition to Cargill.

Armed with over three years of discovery materials and two complete depositions from Zunker, Cargill sought to depose Zunker yet again. The district court denied this request. The denial of the request was a prop-

er exercise of the court's authority and was certainly within the bounds of reason. Therefore, there was no abuse of discretion.

### APPEAL NO. 94–79

In Appeal No. 94–79, Mountain Cement appeals the denial of prejudgment interest on its property damage award and the decision to set off, against its portion of the verdict, the settlement money it received from USX and Leeco. Mountain Cement argues that its property damage claim was liquidated and that prejudgment interest should have been awarded.

### H. Prejudgment Interest

Prejudgment interest may be recovered on a liquidated claim "'that is readily computable by basic mathematical calculation.'" *Dunn v. Rescon Technology Corp.*, 884 P.2d 965, 968 (Wyo.1994) (*quoting O's Gold Seed Co. v. United Agri–Products Financial · Services, Inc.*, 761 P.2d 673, 677 (Wyo.1988)). An unliquidated claim can be converted into a liquidated claim if the amount claimed can be determined, *inter alia*, "without reliance on opinion or discretion." *Rissler & McMurry Co. v. Atlantic Richfield Co.*, 559 P.2d 25, 33 (Wyo.1977) (*citing Elte, Inc. v. S.S. Mullen, Inc.*, 469 F.2d 1127, 1133 (9th Cir.1972)).

Mountain Cement's claim for prejudgment interest on the property damage award must be rejected because it cannot be determined without reliance on opinion or discretion. Labor costs of $261,192.00 and vendor invoices totaling $2,127,650.00 account for $2,388,842.00 of the $2,734,671.00 property damage claim. Labor costs and vendor invoices, attributed to the silo collapse, were calculated in reliance on the discretion of Mountain Cement's employees.

On January 21, 1988, Mountain Cement circulated a memorandum regarding "[a]ll charges associated with the blend silo collapse/explosion * * *." The memorandum asked management to advise employees "to be [specific] on time cards when doing any work related to the job. This will include *all* associated labor, (clean-up, guarding, repair)." (Emphasis in original.) Each em-

ployee decided how much time he or she would allocate to the silo collapse on a given day. Employees were required to differentiate between their regular work duties and any work they believed should be attributed to the silo collapse. The opinions and discretion of Mountain Cement's employees determined labor costs.

. The cost of vendor invoices attributable to the silo collapse was determined by Mountain Cement's accounting expert, Alan Wells (Wells). When asked whether he simply compiled those invoices, Wells responded:

> I don't know if that's true. We didn't do a thorough test of each vendor in determining what each vendor did, but we did go through a list of vendors to see *if it made sense to us or not.* [To include the invoice in the property damage claim.]
>
> There was [sic] some items from Mountain Cement that we didn't think * * * should be in the property claim, and we eliminated those.
>
> In addition, there was [sic] some invoices we found that *looked like maybe they should have been included, and we asked about those, whether they should have been included.*

(Emphasis added.)

Wells exercised discretion in deciding which invoices to attribute to the silo collapse. Mountain Cement's work force exercised its discretion in determining labor costs that were related to the collapse. A major portion of Mountain Cement's property damage costs were generated in a discretionary fashion. We hold that Mountain Cement's property damage claim is not liquidated and that prejudgment interest on the claim was properly denied. *Rissler & McMurry Co.,* 559 P.2d at 33.

### APPEAL NO. 94–72

In Appeal No. 94–79, Mountain Cement argues that the district court erred when it set off settlement proceeds from USX and Leeco against Mountain Cement's jury award. In Appeal No. 94–72, Salt Creek Welding challenges the reduction of its portion of the verdict. Because we resolve this issue on a different analytical basis,

we will not consider the arguments presented by Mountain Cement and Salt Creek.

This issue is controlled by principles of equity and the fact that a party cannot recover more than full performance for breach of contract. *See, Hurd v. Nelson,* 714 P.2d 767, 771 (Wyo.1986). Possessing equitable jurisdiction, the district court has the inherent power to allow or compel an equitable set-off. *In re First Nat. Bank of Arthur, Ill.,* 23 F.Supp. 255, 258 (E.D.Ill. 1938). The decision to allow or compel a set off rests within the sound discretion of the trial court. *Reisman v. Independence Realty Corp.,* 195 Misc. 260, 89 N.Y.S.2d 763, 766 (1949), *aff'd,* 277 A.D. 1020, 100 N.Y.S.2d 407 (1950).

Counsel for Mountain Cement, referring to the settlement received from USX and Leeco, said "[t]here's probably a responsibility on the part of the Court to apply that amount [settlement proceeds] to any Judgment that we would receive against Cargill in this case." Counsel went on to say that placing the set-off issue before the jury would be "unobjectionable." Accordingly, the district court informed the jury that any award would be reduced by the amount already received in settlement. Neither Salt Creek nor Mountain Cement objected.

Equity will not allow a party to switch horses in mid-stream. Salt Creek and Mountain Cement cannot endorse the set-off plan at trial and then challenge the reduction on appeal. We hold that Salt Creek and Mountain Cement are estopped from challenging on appeal the plan they endorsed at trial. *See, Matter of Paternity of SDM,* 882 P.2d 1217, 1224 (Wyo.1994) and *Allen v. Allen,* 550 P.2d 1137, 1142 (Wyo.1976). We further hold that the district court properly set off the jury awards against the settlement proceeds. Salt Creek and Mountain Cement pursued breach of contract remedies at trial and are not entitled to the windfall they would receive if their jury awards were not set off against proceeds from the settlement. *See, Hurd,* 714 P.2d at 771.

## IV.  CONCLUSION

The decision of the district court and the jury verdict are affirmed in all respects.