Steve **TRIBE**, Appellant (Plaintiff),

v.

Ross **PETERSON** and Chrissy Peterson, Appellees (Defendants).

No. 97–151.

Supreme Court of Wyoming.

Sept. 3, 1998.

Michael P. Reynolds and Bradley A. Schreiber of Quinn, Eiesland, Day & Barker, Belle Fourche, South Dakota, for Appellant(Plaintiff).

Mark L. Hughes of Hughes Law Office, Sundance, and Daniel F. Duffy of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, South Dakota, for Appellees(Defendants).

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and TAYLOR,* JJ.

TAYLOR, Justice.

Appellant, Steve Tribe, purchased his first horse, Moccasin Badger, from appellees, Mr. and Mrs. Peterson. Asserting that the sellers had expressly guaranteed that the horse would never buck, Mr. Tribe brought suit against the Petersons for breach of warranty when Moccasin Badger unceremoniously ejected Mr. Tribe from the saddle, shattering his left wrist. After the district court denied Mr. Tribe's motion for summary judgment on the issue of express warranty, the subsequent trial resulted in the jury's rejection of Mr. Tribe's claims and a "no buck" verdict. Mr. Tribe then moved for judgment as a matter of law, or in the alternative, a new trial. Both motions were denied. Finding that the jury acted reasonably, we affirm.

## I. ISSUES

The parties identify two issues for review:

---

* Chief Justice at time of expedited conference.

1. Whether the district court erred as a matter of law by denying appellant's motion for summary judgment against appellees on the issue of express warranty.

2. Whether the district court abused its discretion by denying appellant's motion for judgment as a matter of law, or in the alternative, a new trial on the issues of express warranty and negligent misrepresentation.

## II. FACTS

The known history of Moccasin Badger (Badger) begins with his purchase in August 1994 by Larry Painter, a rancher who had bought and sold horses "[a]ll [his] life." When Mr. Painter bought and owned Badger, the horse was "plumb gentle * * *." Mr. Painter brought Badger to his Uncle Oliver's in Rapid City, South Dakota in January 1995, describing him at that time: "Well, he was real gentle. And as far as we was concerned, anybody could ride him that had any experience at all riding." Oliver Painter was not called as a witness at trial, but the parties read into the record the following stipulation:

> Rather than calling Oliver Painter to testify, the parties have stipulated that if he did testify, he would testify that this horse, Moccasin Badger, was calm and gentle while he was around him. He did not have any experiences where he bucked.

In February 1995, Oliver Painter advertised the sale of Badger, and the Petersons responded. After Mrs. Peterson rode Badger and found him to be very calm and gentle, and a second visit revealed the same disposition, they purchased him for $2,200.00. During the first month the Petersons owned Badger, they rode him "two to three times a week." "[N]eeding a little money," the Petersons decided to sell Badger at the "Leo Perino sale," which attracts buyers from all over the world.

To ensure that Badger was sound and ready for sale, the Petersons twice brought Badger to Dr. Margie Jones, a board certified horse veterinarian from Sturgis, South Dakota, and Mr. Peterson trained Badger every day for a month prior to the sale. Dr. Jones testified that she found Badger to be "sound," and after performing an extensive physical examination and riding Badger, she concluded that Badger "was gentle and kind and he did what I asked him to."

The Leo Perino sale was held in Newcastle, Wyoming on June 3, 1995. Mr. Tribe and his wife attended the sale, accompanied by Steve Stoddard. The Tribes had moved to Wyoming in 1993 after selling Mr. Tribe's car dealership in northern California and purchasing a 12,000 acre ranch near Colony, Wyoming. The Tribes leased all but 400 acres to Mr. Stoddard, who they asked to assist them in recommending a place to purchase a horse which would be gentle enough for very inexperienced riders. Mr. Stoddard recommended the Leo Perino sale because it had an excellent reputation.

Badger's description in the sale brochure represented him as a "quiet * * * and extra gentle gelding * * * easy to catch, haul and shoe," and "overly kind which makes him a definite kids prospect * * *." Mr. Stoddard initially noticed Badger while Mr. Peterson was roping with Badger in the arena. Mr. Stoddard spoke with Mr. Peterson, and Mr. Peterson told him that Badger "was five years old and that he was really gentle." Later, Mr. Stoddard approached the Petersons to get a better look at Badger, at which time Mr. Stoddard and Mrs. Tribe rode Badger. Mr. Stoddard found the horse to be "very gentle and very well-broke to ride." According to Mr. Stoddard, he asked Mr. Peterson if the horse "had any buck in him" to which Mr. Peterson responded, "No." Mr. Peterson told Mr. Stoddard that the horse had never bucked with him or any of its previous owners. The testimony conflicts, however, as to whether Mr. Peterson "guaranteed" the horse would never buck in the future. Mr. Stoddard stated he got a "guarantee" from both Petersons, while the Petersons denied they made such a guarantee, insisting it would be impossible to guarantee that any horse would not buck in the future.

Nonetheless, Mr. Tribe purchased Badger on his belief that he had been guaranteed that this horse would never buck. Upon returning to the ranch, Mrs. Tribe rode Badger without incident. The third time Mrs. Tribe rode Badger, however, she was thrown. Ten days later, after riding Badger,

Mrs. Tribe asked Mr. Tribe if he wanted to ride. When he said he did, she resaddled the horse. Mr. Tribe got on the horse, and almost immediately was thrown to the ground, shattering his left wrist. Some time later, Mr. Tribe contacted the Petersons to inform them of the injury, tape recording one conversation with Mr. Peterson.

Mr. Tribe brought this lawsuit, alleging that the Petersons breached an express warranty that Badger would never buck, and that they negligently and fraudulently misrepresented Badger's nature. Mr. Tribe filed a motion for summary judgment asserting an express guarantee as a matter of law, which motion was denied by the district court. After a three-day trial to the jury, the jury rejected Mr. Tribe's allegations and found for the Petersons on all claims. Mr. Tribe then moved for judgment as a matter of law, or in the alternative, for a new trial. The district court denied these motions, and this timely appeal followed.

### III. STANDARD OF REVIEW

▮▮ Mr. Tribe requests that we review the district court's denial of his motion for summary judgment. The denial of summary judgment may not be reviewed on appeal following trial on the merits. *Cargill, Inc. v. Mountain Cement Co.*, 891 P.2d 57, 61 (Wyo. 1995). The proper procedural mechanism for challenging an adverse judgment, following a trial on the merits, is a motion for judgment as a matter of law. *Id.*

▮▮ A decision to grant or deny a motion for judgment as a matter of law is reviewed *de novo. Id.* at 62. We review the evidence in the light most favorable to the non-moving party, affording every reasonable inference to be drawn therefrom, to determine whether the jury's verdict is contrary to the only conclusion which may reasonably be reached from the facts presented. Judgment as a matter of law should be granted cautiously and sparingly. *Id.*

### IV. DISCUSSION

▮▮ Mr. Tribe contends that, as a matter of law, the written description in the sale brochure and verbal representations of the Petersons created an express warranty that Badger was a calm and gentle horse which would never buck. "An express warranty is created by any affirmation of fact made by the seller to the buyer which relates to the goods and becomes a part of the basis of the bargain." *Garriffa v. Taylor,* 675 P.2d 1284, 1286 (Wyo.1984), *see also* Wyo. Stat. § 34.1–2–313(a)(ii) (1997) ("Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description[.]"). "In order for an express warranty to exist, there must be some positive and unequivocal statement concerning the thing sold which is relied on by the buyer and which is understood to be an assertion concerning the items sold and not an opinion." *Garriffa,* 675 P.2d at 1286. A representation which expresses the seller's opinion, belief, judgment or estimate does not constitute an express warranty. *Id.* The primary question is whether there was an affirmation of fact which amounted to an express warranty or whether the representations were merely opinions. The answer to this question results from the consideration of all the circumstances surrounding a sale and should be made by the trier of fact. *Id.*

The verdict form at trial asked only: "Are defendants liable to the plaintiff for damages for breach of an express warranty?" We therefore do not know if the jury determined there was no express warranty or whether a warranty was given but not breached. Either way, the jury's conclusion could reasonably be reached on the evidence presented at trial.

We begin by examining the description of Badger in the sales brochure. Mr. Tribe insists that this description guaranteed a gentle horse, and that the fact that he and his wife were thrown establishes that Badger was not gentle or calm. The testimony of all the witnesses, however, reveals that Badger was calm and gentle with everyone but the Tribes. The Painters and the Petersons testified that Badger was "kind" and "real gentle" throughout the time he was in their care. When asked to read the description of Badger in the sale brochure, both Larry Painter and Leo Perino testified that it was an accu-

rate description. Dr. Jones testified her examination of Badger included the use of a scope "about 36 inches long" which requires sedation of "close to 50 percent" of horses which undergo the procedure. However, she never considered giving Badger a sedative before using the scope on him.

Moreover, Mrs. Tribe telephoned Mrs. Peterson within four or five days after the sale to say: "I want you to know I'm really getting along well with Badger. I just love him. Do you have anymore like him that we could buy?" Finally, evidence was presented which established that the disposition of a horse may be affected by the rider, the equipment, the type of feed, or a new environment. Mr. Perino affirmed that "even gentle horses" may buck. Clearly, there was evidence to support a finding that the description of Badger in the brochure was the Petersons' well-founded opinion regarding Badger's disposition. Further, even if the brochure constituted an express warranty that Badger was calm and gentle, the evidence supports the conclusion that the warranty was not breached.

We next examine Mr. Tribe's contention that he was given a guarantee that Badger would never buck. While Mr. Stoddard and Mr. Tribe testified that the Petersons expressly made this guarantee, both Mr. and Mrs. Peterson adamantly denied that they guaranteed Badger would never buck in the future. "As the sole judge of the credibility of witnesses, the jury was not required to accept appellant's version of the facts." *Archuleta v. Valencia,* 871 P.2d 198, 201 (Wyo.1994). It appears a "no buck" warranty is a hard sell to a Wyoming jury. Obviously, the record supports the jury's conclusion that representations regarding Badger's past behavior were true, and no express warranty was given as to Badger's future behavior.

Mr. Tribe's claim to judgment as a matter of law on the theory of negligent misrepresentation is equally without merit. There is overwhelming evidence that the in-

formation provided by the Petersons did not misrepresent Badger's disposition. Mr. Tribe's assertion that the Petersons "had a duty to inform Mr. Tribe that all horses, including Badger, have a propensity to buck," is unsupported by cogent argument or case law.[1] We also note that Mr. Tribe's reliance on his alleged naivete is contradicted by the fact that Mr. Stoddard, who accompanied Mr. Tribe and advised him in the purchase of the horse, was "knowledgeable about horses." It is undisputed that all discussions allegedly relating to a "guarantee" were with Mr. Stoddard, not Mr. Tribe.

### V. CONCLUSION

At trial, the jury was presented with evidence supporting the conclusion that no express warranty was made that Badger would not buck, under any circumstances, in the future. Evidence was also presented which supports the jury's determination that the Petersons did not misrepresent the disposition of the animal at the time it was sold. The jury reached a patently reasonable verdict, and therefore we affirm the district court's denial of Mr. Tribe's motion for judgment as a matter of law, or in the alternative, his motion for a new trial.

---

1. The only case cited in support of this declaration, *Evans v. Upmier,* 235 Iowa 35, 16 N.W.2d 6 (1944), deals with the duty of the operator of a riding academy to provide reasonably safe animals—it bears no relationship to the facts