2010 WY 120

**Mark A. DORR, Appellant (Defendant),**

v.

**SMITH, KELLER & ASSOCIATES,**
Appellee (Plaintiff).

No. S–09–0249.

Supreme Court of Wyoming.

Aug. 24, 2010.

Representing Appellant: Greg L. Goddard of Goddard, Wages & Vogel, Buffalo, Wyoming.

Representing Appellee: W. Perry Dray and Timothy L. Woznick of Dray, Thomson & Dyekman, P.C., Cheyenne, Wyoming.

Before KITE, C.J., and GOLDEN, HILL, VOIGT *, and BURKE, JJ.

KITE, Chief Justice.

[¶ 1]   Mark A. Dorr appeals from the district court's denial of his motion to declare Smith, Keller & Associates' (SKA) judgment against him satisfied.  He challenges the dis-

* Chief Justice at time of expedited conference.

trict court's rulings that posting a supersedeas bond did not stop interest from accruing on the judgment and he was not entitled to credit against the judgment for settlements made by third parties in related actions.

[¶ 2]   Finding no error, we affirm.

### ISSUES

[¶ 3]   Mr. Dorr articulates two appellate issues:

  I.  Whether the District Court erred when it ruled that the posting of a supersedeas bond does not toll the accrual of interest on a judgment.

 II.  Whether the District Court erred when it ruled that Mark Dorr was not entitled to credits against the original judgment amount for settlement payments made by other parties.

SKA maintains that the district court properly denied Mr. Dorr's motion to declare the judgment satisfied because posting a supersedeas bond does not stop interest from accruing on a judgment and Mr. Dorr was not entitled to credit against the judgment for the third party settlements.

### FACTS

[¶ 4]   This appeal is the most recent stop on a long and tortured path toward dissolution and termination of an ill-fated and short-lived accounting partnership.  Many of the underlying facts are not relevant to our decision here, but are set out in detail in our four earlier decisions in this case.  *Dorr, Keller, Bentley & Pecha v. Dorr, Bentley & Pecha,* 841 P.2d 811 (Wyo.1992) (*Dorr I*); *Smith, Keller & Associates v. Dorr & Associates,* 875 P.2d 1258 (Wyo.1994) (*Dorr II* ); *Pecha v. Smith, Keller & Associates,* 942 P.2d 387 (Wyo.1997) (*Dorr III* ) and *Smith, Keller & Associates v. Dorr,* 4 P.3d 872 (Wyo.2000) (*Dorr IV* ).  We will limit our recitation of the facts to those relevant to this particular appeal.

[¶ 5]   In 1988, two accounting firms, Dorr and Associates of Gillette and SKA of Cheyenne formed a third accounting firm named Dorr, Keller, Bentley and Pecha (DKBP).

Difficulties soon arose between the partners, and SKA notified Dorr and Associates that it intended to dissolve the DKBP partnership in May 1989. In accordance with the terms of the partnership agreement, the parties submitted their disputes to arbitration. *Dorr I*, 841 P.2d at 813. The arbitration order awarded $105,163.78 in damages to SKA for unpaid compensation and violation of the dissolution provisions of the partnership agreement. *Dorr I*, 841 P.2d at 813 n. 1. The arbitration award also provided:

> In addition to and exclusive of the foregoing, Dorr is directed to deliver to Keller all sums in [a bank account].
>
> Dorr is further directed to deliver to Keller all accounts receivable existing as of May 4, 1989, and to pay to Keller any sums paid for said accounts receivable hereafter.
>
> Dorr is further directed to return to Keller all computer software in Dorr's possession which was brought into the partnership and/or owned by Keller as of May 4, 1989.

*Id.* The district court confirmed the arbitration award.

[¶ 6] In 1996, Mr. Dorr and his associates posted a $120,000 supersedeas bond to stay execution on the judgment. We ultimately ordered the district court in *Dorr IV*, 4 P.3d at 876, to:

> [E]nter a judgment against Mark Dorr and Steven Bentley, jointly and severally, for the arbitration award in the amount of $105,163.78, plus interest thereon from and after August 24, 1989; enter a judgment against Mark Dorr and Steven Bentley, jointly and severally, for the work in process in the amount of $1,451.96, plus appropriate interest; and direct the Clerk of the District Court to pay over to SKA all funds held on behalf of D & A, the Dorr faction, or members thereof, in partial satisfaction of the judgment.

The bond was released to SKA and, apparently, it took no further action to execute on the judgment for several years.

[¶ 7] On April 30, 2007, SKA filed a motion to revive the judgment pursuant to Wyo. Stat. Ann. § 1–16–502 (LexisNexis 2009).[1] The motion represented that over $64,000 on the judgment principal and $43,000 in interest remained unpaid. In response, Mr. Dorr filed a motion to declare the judgment satisfied. Of relevance to this appeal, Mr. Dorr claimed that the accrual of interest ceased when he posted the supersedeas bond and he was entitled to credit against the judgment for two settlements made by third parties Bill Dorr (Mr. Dorr's father) and First Interstate Bank in a related fraudulent conveyance action.

[¶ 8] After conducting hearings on the motion, the district court ruled that interest did not stop accruing when Mr. Dorr posted the supersedeas bond and Mr. Dorr had not met his burden of proving that he was entitled to set off the two settlements against SKA's outstanding judgment. Mr. Dorr appealed.

## DISCUSSION

### 1. Accrual of Interest on Judgment After Posting Supersedeas Bond

[¶ 9] SKA secured a monetary judgment against Mr. Dorr and, pursuant to Wyo. Stat. Ann. § 1–16–102(a) (LexisNexis 2009), interest accrued on that judgment:

> (a) Except as provided in subsections (b) and (c) of this section, all decrees and judgments for the payment of money shall bear interest at ten percent (10%) per year from the date of rendition until paid.

*Id.*

[¶ 10] Mr. Dorr posted a supersedeas bond to prevent SKA from executing on the

---

1. Section 1–16–502 states:

   When a judgment, including judgments rendered by a circuit court, a transcript of which has been filed in the district court for execution, becomes dormant, it may be revived in the same manner as prescribed for reviving actions before judgment or by action. When either party to the dormant judgment, his agent or attorney, makes affidavit showing that the adverse party is a nonresident of the state and that the judgment remains unsatisfied in whole or in part and the amount owing thereon, service may be made by publication as in other cases. If sufficient cause is not shown to the contrary, the judgment shall stand revived for the amount which the court finds to be due and unsatisfied thereon. The lien of the judgment for the amount due shall be revived and shall operate from the time of the entry of the conditional order or the filing of the motion.

judgment while the case was on appeal. W.R.A.P. 4.02 governs supersedeas bonds and provides in pertinent part:

(a) Whenever an appellant so entitled desires a stay on appeal, appellant may present to the trial court a supersedeas bond in such amount as shall be fixed by the trial court and with surety or sureties to be approved by the court or by the clerk of court. The bond shall be conditioned for the satisfaction of the judgment in full together with costs, interest, and damages for delay, if for any reason the appeal is not perfected or is dismissed, or if the judgment is affirmed, and to satisfy in full such modification of the judgment and such costs, interest, and damages as the appellate court may adjudge and award.

(b) When the judgment is for the recovery of money not otherwise secured, the amount of the bond shall be fixed at such sum as will cover the whole amount of the judgment remaining and unsatisfied, costs on appeal, and interest, unless the court, after notice and hearing and for good cause shown, fixes a different amount or orders security other than the bond.

[¶ 11] Mr. Dorr claims that when he posted the bond, interest stopped accruing on the judgment and release of the bond to SKA satisfied the judgment. Resolution of this issue requires us to interpret the above-referenced statute and court rule. We interpret statutory provisions by employing the following standards:

The paramount consideration is to determine the legislature's intent, which must be ascertained initially and primarily from the words used in the statute. We look first to the plain and ordinary meaning of the words to determine if the statute is ambiguous. A statute is clear and unambiguous if its wording is such that reasonable persons are able to agree on its meaning with consistency and predictability. Conversely, a statute is ambiguous if it is found to be vague or uncertain and subject to varying interpretations. If we determine that a statute is clear and unambiguous, we give effect to the plain language of the statute.

*Kennedy Oil v. Dep't of Revenue,* 2008 WY 154, ¶ 10, 205 P.3d 999, 1003 (Wyo.2008). *Morris v. CMS Oil and Gas Co.,* 2010 WY 37, ¶ 26, 227 P.3d 325, 333 (Wyo.2010). Court rules are construed by applying the same principles. *MM v. State of Wyoming, Dep't of Family Servs.,* 2009 WY 28, ¶ 11, 202 P.3d 409, 413 (Wyo.2009). *See also, Cotton v. McCulloh,* 2005 WY 159, ¶ 14, 125 P.3d 252, 257–58 (Wyo.2005). All of these determinations involve issues of law and are reviewed *de novo* on appeal. *Morris,* ¶ 26, 227 P.3d at 333; *Nickle v. Bd. of County Comm'rs of Platte County,* 2007 WY 115, ¶ 16, 162 P.3d 1208, 1213 (Wyo.2007) (interpreting court rule).

[¶ 12] Section 1–16–102(a) states that interest accrues "from the date of rendition until paid" and Rule 4.02(a) indicates that the bond should be conditioned to account for "interest" and "damages for delay." In *V–1 Oil Co. v. People,* 799 P.2d 1199, 1203 (Wyo.1990), we confirmed that posting a supersedeas bond "does not constitute accomplished payment until an unqualified right to the proceeds accrues after the judgment is affirmed on appeal." If the legislature intended for the filing of a supersedeas bond to stop interest from accruing on the judgment, it would have specified that and not simply stated that interest accrues until the judgment is "paid." Section 1–16–102(a). Because payment of the judgment is not achieved by posting a supersedeas bond, the district court properly determined that, under the clear language of § 1–16–102 and Rule 4.02, interest continued to accrue on SKA's judgment after Mr. Dorr posted the bond.

[¶ 13] This interpretation is consistent with the stated purpose of post-judgment interest which is to " 'compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damages and the payment by the defendant.' " *Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 835–36, 110 S.Ct. 1570, 1589, 108 L.Ed.2d 842 (1990), quoting *Poleto v. Consol. Rail Corp.,* 826 F.2d 1270, 1280 (3d Cir.1987). *See also, Rufer v. Abbott Laboratories,* 154 Wash.2d 530, 114 P.3d 1182, 1193 (2005) (en

banc) (stating that interest is not imposed as a punishment on the judgment debtor but rather a form of compensation for the judgment creditor). If interest did not continue to accrue after a supersedeas bond was posted, the judgment creditor would not be fully compensated and the purpose of the statutory interest requirement would not be served.

[¶ 14] Mr. Dorr maintains that, if a judgment creditor is allowed to collect interest during the appeal, he will have an incentive to prolong the proceedings by filing additional appeals in order to collect more interest. This argument is unconvincing. First, there is nothing to prevent a judgment debtor from paying the full amount of the judgment during the appeal which would stop the interest from accruing. In fact, we ruled in *Parker v. Artery*, 889 P.2d 520, 527–28 (Wyo.1995), that payment of the entire judgment amount into the court after the plaintiff refused to accept payment pending appeal absolved the defendant from further accrual of interest. *See also, Crawford v. Amadio*, 932 P.2d 1288, 1295 (Wyo.1997); *Bartlett v. Heersche*, 209 Kan. 369, 496 P.2d 1314, 1317–18 (1972) (holding that when the full amount of a judgment is paid into court, interest is no longer recoverable from the judgment debtor). Unlike when the judgment amount is paid into the court, a supersedeas bond is not available to the judgment creditor and, consequently, interest continues to accrue on the judgment principal to compensate him for the loss of use of the money.

[¶ 15] Mr. Dorr also asserts that the language of Rule 4.02 indicates that payment of the bond should be considered full satisfaction of the judgment, even if it does not fully cover the accrued interest. He correctly points out that Rule 4.02 states that the amount of a supersedeas bond shall be sufficient to cover the judgment, costs, interest, and other damages as a result of the delay. *See also,* 5 Am.Jur.2d *Appellate Review* § 402 (2010) ("the amount of a supersedeas bond typically takes into account the amount needed to satisfy the judgment appealed from, as well as costs, interest, and any damages which might be caused by the stay pending appeal").

[¶ 16] However, the fact that the bond should be set in an amount sufficient to cover all aspects of the judgment creditor's damages does not mean that the judgment creditor will be limited to recovery of the amount of the bond. The "purpose of a supersedeas bond is to protect nonappealing parties by maintaining the status quo during the appeal and insuring that those who have obtained the judgment under review will not be prejudiced by a stay of the judgment pending final determination of the appeal." *Id.* In order to prevent the judgment creditor from being prejudiced, he must be allowed to collect the full amount of accrued interest even if the bond amount is insufficient. In fact, we recognized that additional interest may be due SKA in our remand in *Dorr IV* when we directed "the Clerk of the District Court to pay over to SKA all funds held on behalf of [Dorr] in **partial** satisfaction of the judgment." *Dorr IV,* 4 P.3d at 876 (emphasis added).

[¶ 17] Mr. Dorr argues that *Wyoming Bancorporation v. Bonham,* 563 P.2d 1382 (Wyo.1977) (*Bonham II* ) applies here and dictates that the judgment creditor's recovery is limited to the amount of the bond. In *Wyoming Bancorporation v. Bonham,* 527 P.2d 432 (Wyo.1974) (*Bonham I* ), we affirmed the state examiner's decision to issue a bank charter to Wyoming Security Bank of Sheridan. During the course of that appeal, Wyoming Bancorporation asked for and received a stay on the issuance of the charter pending appeal. The stay prevented Security Bank from moving forward with the opening of its bank during the appeals process. The district court heard evidence on the damages Security Bank would suffer as a result of the delay in issuance of the charter and ordered Wyoming Bancorporation to file a $100,000 bond. *Bonham II,* 563 P.2d at 1384. Security Bank did not seek modification of the bond amount during the pendency of the appeal. *Id.* at 1390–91.

[¶ 18] After prevailing on appeal, Security Bank filed a motion under the rules of civil procedure pertaining to injunctions and bonds [2] requesting that the district court

---

**2.** *See, e.g.,* W.R.C.P. 62, 65, 65.1; and 72.1 and 73 (superseded in 1978).

award it $89,269 in addition to the $100,000 bond to cover its actual damages resulting from the delay in the issuance of the charter. *Id.* at 1388–89. After a hearing, the district court ordered Wyoming Bancorporation to pay Security Bank $162,488.96. *Id.* at 1384.

[¶ 19] On appeal in *Bonham II,* Wyoming Bancorporation argued that Security Bank's recovery was limited to the bond amount. We agreed, reasoning that the bond obligation was contractual and, because Security Bank had not objected to the amount of the bond, had not requested modification of the bond amount during the appeal period, and elected to proceed under the abbreviated procedures for recovering under the bond instead of bringing an independent action for damages, its recovery was limited to the amount of the bond. *Id.* at 1388–91.

[¶ 20] Mr. Dorr asserts that the principles employed in *Bonham II* and injunction bond cases from other jurisdictions [3] should be applied to post-judgment supersedeas bonds and payment of a supersedeas bond to the judgment creditor should be considered full satisfaction of the judgment. The district court aptly noted that the two circumstances are different. In the case of an injunction bond, the amount of damages the enjoined party will suffer as a result of the appeal is not clear. As in *Bonham II,* the court may hold an evidentiary hearing when setting the bond to attempt to estimate the damages which may arise from the injunction. Nevertheless, the amount due to the enjoined party if the injunction is eventually found to have been issued in error is still subject to differences of opinion. We recognized in *Bonham II* that, in the event the bond does not cover the injured party's damages, he can institute an independent action for tort damages. *Id.* at 1389–90.

[¶ 21] In contrast, a judgment creditor is entitled, pursuant to § 1–16–102(a), to a specific amount of interest, costs, etc. In setting the supersedeas bond, the court and parties are aware of the amount of the judgment and have only to estimate the interest and costs which will accrue during the appeal. Unlike in the case of an injunction bond, the total amount owed the judgment creditor is liquidated, subject to easy calculation after the appellate ruling is rendered, and a separate tort action is not available to the judgment creditor to collect the delay damages. Moreover, to hold, as Mr. Dorr advocates, that the filing of a supersedeas bond prevents a judgment creditor from collecting interest during the pendency of the appeal would undermine the purpose of post-judgment interest and would deprive the judgment creditor of the value of the money he is owed. The district court properly concluded, as a matter of law, that filing a supersedeas bond does not toll the accrual of interest on a judgment and the judgment creditor's recovery is not limited to the bond amount.

### 2. Credit for Third Party Settlements

[¶ 22] In a separate action commenced in 1990, SKA alleged that Mr. Dorr and his associates had fraudulently conveyed property in which it had an interest to Bill Dorr (Mr. Dorr's father) and First Interstate Bank, among others. Bill Dorr paid SKA $10,000 to settle the claim and First Interstate Bank paid $40,000. Mr. Dorr argues that the district court erred by refusing to credit the settlement amounts against SKA's $105,163.78 monetary judgment.

[¶ 23] As Mr. Dorr correctly points out, Wyoming law does not favor double recoveries for the same legal injury. *See, e.g., Miller v. Campbell County,* 901 P.2d 1107, 1113 (Wyo.1995); *UNC Teton Exploration Drilling, Inc. v. Peyton,* 774 P.2d 584, 592 (Wyo.1989). A judgment debtor is, therefore, entitled to credit against a judgment for a settlement that pertains to claims included in the judgment, but is not entitled to credit for settlement of claims that were not part of the judgment. *See, Ultra Resources, Inc. v. Hartman,* 2010 WY 36, ¶ 146, 226 P.3d 889, 934–35 (Wyo.2010). The party asserting satisfaction of a judgment has the burden of proof. 47 Am.Jur.2d *Judgments* § 812 (2010). *See also, Redwine v. Rohlff Lumber*

---

3. Mr. Dorr cites to *Fu Sheng Industrial Co., Ltd. v. T/F Systems, Inc.,* 690 So.2d 617 (Fla.Ct.App. 1997); *Edlin v. M/V Truthseeker,* 69 F.3d 392 (9th

Cir.1995); *In re Ridgemont Apartment Associates, LTD.,* 127 B.R. 934 (N.D.Ga.1991).

*& Supply Co.*, 54 Wyo. 253, 91 P.2d 49, 51–52 (Wyo.1939).

[¶ 24] The decision about whether a credit against an outstanding judgment should be allowed is "controlled by principles of equity." *Ultra,* ¶ 145, 226 P.3d at 934, quoting *Cargill, Inc. v. Mountain Cement Co.*, 891 P.2d 57, 67 (Wyo.1995). The district court has discretion in determining whether to allow a set off. *Id.* We, therefore, apply the abuse of discretion standard when reviewing a district court's decision on a request for a set off. *Id.*

[¶ 25] The district court held an evidentiary hearing on the set off matter. It issued a comprehensive decision letter detailing the course of proceedings in the relevant actions and making numerous factual findings about those proceedings. It noted that the arbitration award rendered against Dorr and Associates in favor of SKA, which was confirmed by the district court and this Court, contained two components: 1) it awarded SKA $105,163.78 for unpaid compensation for 1988 and the portion of 1989 before dissolution and for violation of the dissolution provisions of the partnership agreement; and 2) it directed Dorr and Associates to return to SKA "the proceeds of a particular bank account, all accounts receivable existing as of May 4, 1989, as well as any sums paid on those accounts afterward, and all computer software."

[¶ 26] The district court also described SKA's separate fraudulent conveyance action which led to the Bill Dorr and First Interstate Bank settlements. Ruling that the disputed settlements did not pertain to the monetary award included in the arbitration order, the district court stated:

> The Court is convinced that [Dorr] is not entitled to credit for these payments. The original arbitration award provided for both a monetary award and for a return to [SKA] of certain property it had contributed to the partnership. [SKA] filed a fraudulent conveyance suit to recover portions of that property. Bill Dorr and First Interstate Bank paid money to buy their peace. The settlement probably represented at least a part of the non-monetary

award, although there is no way at this point in time to determine what additional actual and potential exposure each settling party paid money to avoid.... It is sufficient to conclude that the funds were paid by strangers to the original partnership to settle claims which had nothing to do with the original monetary award, and that [Dorr] has not met its burden of proving credit should be given. *Redwine* [*v. Rohlff Lumber & Supply Co.*, 54 Wyo. 253, 91 P.2d 49, 51–52 (Wyo.1939)]. Credit for these settlement amounts will therefore be denied.

[¶ 27] In support of his argument that the district court abused its discretion by concluding that the Bill Dorr and First Interstate Bank settlements were not connected to the monetary judgment against Dorr and Associates, Mr. Dorr directs us to SKA's fraudulent conveyance complaints and subsequent amendments which were attached to his district court brief addressing the set off issue. He asserts that the documents show that SKA believed that its fraudulent conveyance claims were inseparable from the claims which led to the monetary award. While there are aspects of the complaints that could possibly be interpreted as Mr. Dorr advocates, we are not convinced the complaint allegations necessarily tie the fraudulent conveyance action to the monetary award. Instead, the documents seem to include broad, general allegations about the arbitration award.

[¶ 28] The judgment at issue here covered the monetary portion of the arbitration order awarding damages to SKA for unpaid compensation and violation of the dissolution provisions of the partnership agreement. Mr. Dorr has not directed us to any evidence showing that the fraudulent conveyance action was specifically directed at recovering for the claims covered by the monetary judgment. The district court concluded that Mr. Dorr did not meet his burden of proving the requisite connection between the settlements and the monetary judgment; rather, the evidence showed that the fraudulent conveyance settlements pertained to the portions of the arbitration award not included in the $105,163.78 monetary judgment.

[¶ 29]   Mr. Dorr did not provide us with a transcript of the evidentiary hearing, so we do not know what evidence was actually presented on his set off claims.   Accordingly, we must assume that the evidence presented at the hearing supported the district court's factual findings.   *See Askvig v. Wells Fargo Bank Wyoming, N.A.,* 2005 WY 138, ¶ 21 n. 5, 121 P.3d 783, 789 n. 5 (Wyo.2005).   Taking the district court's factual findings as true, we agree that Mr. Dorr did not satisfy his burden of proving that the settlements were related to the monetary judgment.   The district court did not abuse its discretion by refusing to credit the Bill Dorr and First Interstate Bank settlements against SKA's judgment.

[¶ 30]   Affirmed.