# IN THE SUPREME COURT, STATE OF WYOMING

## 2020 WY 115

**APRIL TERM, A.D. 2020**

**September 1, 2020**

JOHNSON COUNTY RANCH
IMPROVEMENT #1, LLC, a Wyoming
limited liability company and SAND
CREEK RANCH PRESERVATION
ASSOCIATION, INC., a Wyoming
nonprofit corporation,

Appellants
(Plaintiffs),

v.

GREG L. GODDARD; LUKE
ANDREW GODDARD; MARCIA
GODDARD and GODDARD RANCH,
LLC, a Wyoming limited liability
company,

Appellees
(Defendants).

GODDARD RANCH, LLC, a Wyoming
limited liability company,

Appellant
(Defendant),

v.

SAND CREEK RANCH
PRESERVATION ASSOCIATION,
INC., a Wyoming nonprofit corporation,

S-19-0251

S-19-0252

Appellee
(Plaintiff).

*Appeal from the District Court of Johnson County*
The Honorable Bill Simpson, Judge

*Representing Appellants in No. S-19-0251:*
    Tyler J. Garrett, Hathaway & Kunz LLP, Cheyenne, Wyoming; Clint A. Langer and
    Darci A.V. Phillips, Davis & Cannon, LLP, Sheridan, Wyoming.

*Representing Appellees in No. S-19-0251:*
    Mitchell H. Edwards, Nicholas & Tangeman, LLC, Laramie, Wyoming; Barry V.
    Crago, Crago Law Offices, PC, Buffalo, Wyoming.

*Representing Appellant in No. S-19-0252:*
    Barry V. Crago, Crago Law Offices, PC, Buffalo, Wyoming;  Mitchell H. Edwards,
    Nicholas & Tangeman, LLC, Laramie, Wyoming.

*Representing Appellee in No. S-19-0252:*
    Tyler J. Garrett, Hathaway & Kunz LLP, Cheyenne, Wyoming; Clint A. Langer and
    Darci A.V. Phillips, Davis & Cannon, LLP, Sheridan, Wyoming.

*Before DAVIS, C.J., and FOX, KAUTZ, GRAY, JJ., and LAVERY, D.J.*

*KAUTZ, J., delivers the opinion of the Court; FOX, J., files a concurring in part and dissenting in part opinion, in which LAVERY, D.J., joins.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]   The Sand Creek Ranch Conservation Community is a subdivision where private home lots are surrounded by ranch land used for farming and grazing. The concept of the subdivision is that homeowners will benefit from the open space in the ranch area and that a ranch/farm operator could utilize the ranch area for productive purposes. These appeals involve a dispute between the residential lot owners and the ranch operator over where the ranch operator can build fences.

[¶2]   Goddard Ranch, LLC, purchased the ranch lands in the subdivision and installed a barbed-wire fence on those lands to keep its cattle out of its alfalfa fields. The fence encroached upon easements belonging to the owners of the residential lots in the subdivision, including Johnson County Ranch Improvement #1, LLC (JCRI). JCRI and Sand Creek Ranch Preservation Association, Inc. (SCRPA), whose members are the owners of the residential lots, sued Goddard Ranch, Greg, Luke, and Marcia Goddard (collectively the Goddards) alleging trespass, ejectment, and breach of contract and seeking injunctive and declaratory relief. With limited exceptions, the district court denied the parties' cross-motions for summary judgment and the matter proceeded to trial. The jury returned a Special Verdict in favor of the Goddards. The Final Judgment incorporated the Special Verdict and also rendered judgment in favor of SCRPA against Goddard Ranch on two of its claims for declaratory relief which were not included in the jury's verdict. Those claims declared SCRPA had the right to install signage and above ground utilities and communication facilities within the easements. SCRPA and JCRI appealed and Goddard Ranch filed a cross-appeal.

[¶3]   In their appeal, SCRPA and JCRI argue the district court erred in denying their summary judgment motion, the evidence was insufficient to support the jury's Special Verdict, and the Special Verdict and Final Judgment are inconsistent. We conclude the district court's order denying summary judgment is not reviewable on appeal; SCRPA and JCRI waived their insufficiency of the evidence arguments by failing to file a motion for judgment as a matter of law under Wyoming Rule of Civil Procedure 50 (Rule 50) in the district court; and they have waived their argument that the Special Verdict and Final Judgment are inconsistent because they prepared and submitted the Final Judgment for the district court's approval.

[¶4]   In its cross-appeal, Goddard Ranch contests the district court's entry of Final Judgment on SCRPA's claims for declaratory relief concerning SCRPA's right to install signage and above ground utilities and communication facilities within the easements. We conclude there was no justiciable controversy with respect to these claims, reverse the Final Judgment as to these claims, and remand to the district court to remove these declarations from the Final Judgment.

1

**ISSUES**

[¶5]   The dispositive issues in these appeals are:

1.   Is the district court's order denying SCRPA and JCRI's motion for summary judgment reviewable on appeal?

2.   Did JCRI and SCRPA waive their insufficiency of the evidence arguments by failing to file a motion for judgment as a matter of law?

3.   Did SCRPA and JCRI waive their argument that the Special Verdict and Final Judgment are inconsistent by preparing and submitting the Final Judgment for the district court's approval?

4.   Was there a justiciable controversy with respect to SCRPA's claims for declaratory relief concerning its right to install signage and above ground utilities and communication facilities within the Platted Easements?

**FACTS**

[¶6]   We recite only those facts relevant to these appeals.

### *Creation of Sand Creek Ranch Conservation Community*

[¶7]   In 2007, JCRI created the Sand Creek Ranch Conservation Community, an 835.75-acre Planned Unit Development (PUD) located in Johnson County, Wyoming.  The PUD consists of 99 one-acre residential lots (Member Fee Parcels) and 736.75 acres of open space (Ranch Lands).  The plat of the PUD (Plat), which was approved by the Johnson County Commissioners and properly recorded, creates nine named "60 Foot Access & Utility Easements" and several unnamed "30 Foot Access & Utility Easements" (collectively the Platted Easements).  The Platted Easements are located on the Ranch Lands and were reserved on the Plat as "private roads and/or private access easements"; "said private road easements and/or private access easements [were] also reserved as perpetual easements for the installation and maintenance of utilities."  The 60' Platted Easements are referred to as the Community Ranch Roads and contain approximately 20' of graveled roadway.  The 30' Platted Easements connect one or more Member Fee Parcels to a Community Ranch Road.

[¶8]   The PUD is subject to a Conservation Easement and an "Amended and Restated Declaration of Preservation Covenants" (Amended Covenants).  The Conservation Easement, granted to the State of Wyoming, encumbers 508.13 acres of property within the PUD.  Its stated purpose is to preserve and protect the property's open spaces while allowing the property to be used for ranching and farming.  In the Conservation Easement,

2

JCRI expressly reserved the right to (1) "conduct normal agricultural operations [on the property] . . . including the grazing and pasture of . . . cattle . . .[,] the leasing of existing pasture for grazing purposes[,] and the growing of hay and other crops"; (2) "build, maintain, and repair perimeter and other fencing [on the property] related to the ranching [and] farming . . ., provided that fencing shall be constructed so as not to exclude or unduly restrict wildlife movement to and from the [p]roperty"; and (3) "construct, maintain and repair underground utility systems [on the property], including underground water wells, cisterns, and appurtenances." The Conservation Easement prohibits, among other things, "the construction or placement of any residential, commercial or industrial buildings or other facilities, electronic or communications transmission or receiving tower, energy facility, camping accommodations, mobile homes, boat ramps, billboards, or other advertising materials or structures within the [p]roperty."

[¶9] The Amended Covenants state they "shall run with the land and shall be a burden and benefit to the [PUD], [JCRI], [SCRPA], [SCRPA's] Members and their successors, and all parties having any right, title or interest in the land or any part thereof, their heirs, successors and assigns, all for the purposes set forth in Article II of [these Amended Covenants]." Those stated purposes are: (1) "that the lands of [the PUD] remain intact [and] its open spaces preserved for the use, benefit and enjoyment of the Members and the Ranch Owner as described in [the Amended Covenants]"; (2) that the [PUD's] scenic beauty be preserved"; and (3) "that the Members and the Ranch Owner enjoy a sense of privacy, seclusion and solitude." It defines "Ranch Owner" as "the record title owner of the Ranch Lands"; "Ranch Lands" as "includ[ing] all lands lying within the boundary of the Plat . . . less the ninety-nine (99) Member's Fee Parcels"; and "Member's Fee Parcel" as "one of the ninety-nine (99) individually-owned parcels of fee land depicted on the Plat. . . ." SCRPA is charged with implementing and enforcing the Amended Covenants for the benefit of its Members and the Ranch Owner.

[¶10] Section 5.7 of the Amended Covenants governs the Community Ranch Roads. It states the roads "shall be private," are "limited to those named on the Plat," and are to be maintained and improved by SCRPA and the Ranch Owner. It requires the roads to "have an unobstructed horizontal clearance width of not less than 20' and an unobstructed vertical clearance height of 13.5'." It defines "[u]nobstructed . . . as a clear zone area that would not have protrusions or impediments within it that would preclude the opening of doors, operation of outriggers, or pulling of hose."

[¶11] Section 6.1 of the Amended Covenants gives SCRPA Members and their guests an easement in the Community Ranch Roads. The easement provides "to the Members and their guests the rights to maintain and use the improved roadways and borrow ditches lying inside of the Community Ranch Road easements described on the Plat for use on foot,

bicycles, or horseback." The easement "is appurtenant to the [Members' Interests],[1] shall pass with title [thereto], and is a non-exclusive easement." It "is in addition to the rights granted to the Members by the Plat and other provisions of [the Amended Covenants]."

[¶12] Section 7.3 of the Amended Covenants, entitled "Entryway Easements," gives SCRPA's Members "the right to maintain at each entrance of the [PUD] an area not to exceed one-quarter acre in which to maintain central garbage collection facilities, post office boxes, an information board, and other items necessary and desirable for the Members." It requires the "Ranch Owner's consent to the location and establishment of such easement [which] shall not be unreasonably withheld." It also provides the maximum dimensions of "any information board" and states the information board "shall be available for Members to place notices and advertisements relating to the [Members' Interests], including offers to sell [their interests] and [SCRPA] events for the Members."

[¶13] Section 5.9 addresses "Utilities for Member's Fee Parcels." It states:

> Power and telecommunication service have been established [by JCRI]. Power supply junction points at single phase low profile transformer pad mounts have been located by [JCRI] to facilitate subsequent final power distribution to the individual Building Envelopes. All utilities shall be underground and right of way shall not be unreasonably withheld by Ranch Owner where pad mounts are not located in Community Ranch Road rights-of-way that are indicated on the Plat.

[¶14] Several sections of the Amended Covenants pertain to the Ranch Owner's operations. Section 5.1 states:

> Until all, or a portion, of a Member's Fee Parcel has been placed under a Final Improvement Plan developed by the Member and approved by the Design Review Committee in accordance with the Design Review Manual, the Member's Fee Parcel will be operated by [the] Ranch Owner as part of the Ranch Lands, provided [the] Ranch Owner shall not encumber the legal title of any Member's Fee Parcel.

---

[1] The Amended Covenants refer to "Ranch Interests" which "are each comprised of one of the ninety-nine (99) individually-owned parcels of fee land depicted on the Plat, plus a one ninety-ninth (1/99th) undivided interest in all benefits and burdens conveyed through membership in [SCRPA]. The Ranch Interest defines the totality of a Member's ownership interest [in the PUD]." So as not to confuse "Ranch Interests" with "Ranch Owner" and "Ranch Lands," we refer to the "Ranch Interests" as the "Members' Interests."

4

Section 9.1 allows the Ranch Owner "to construct on the Ranch Lands a personal residence, along with other buildings . . . , structures, fencing, landscaping, and improvements which are necessary to the operations of the Ranch Lands . . . ." It further provides: "All buildings, structures, fencing, landscaping and other improvements on the [PUD] shall be subject to and shall conform to the Design Review Manual and [these Amended Covenants]."

[¶15] Article 11 of the Amended Covenants, entitled "Agricultural Operations," states the "Members recognize that the Ranch Owner may conduct on the Ranch Lands agricultural operations, and other activities typically occurring on rural properties, which create certain nuisances and noises which the Members hereby accept." It also provides that the Members "specifically acknowledge the Ranch Owner's right to operate the Ranch Lands like any other good steward of the land which operations include, but are not limited to, grazing, farming, hunting, and equestrian activities."

### Goddard Ranch Purchases the Ranch Lands

[¶16] Between 2007 and 2014, JCRI sold 23 Member Fee Parcels. It owns the remaining 76 parcels. None of the Member Fee Parcels have been developed or built upon.

[¶17] In November 2014, JCRI sold the Ranch Lands to Goddard Ranch at a public auction. Goddard Ranch took physical possession of the Ranch Lands in March 2015, after a preexisting agricultural lease expired. Several months later, Goddard Ranch installed an electric fence on the Ranch Lands in order to keep its cattle out of its alfalfa fields. Because wildlife destroyed this fence, Goddard Ranch installed a permanent barbed-wire fence on the Ranch Lands in November 2015. The fence encroached on the 60' Platted Easements from as little as 3 mm (1/100th of a foot) in some areas to as much as 20' in other areas, for a total encroachment of 4,145.3 lineal feet. The fence also intersected three Member Fee Parcels owned by JCRI and blocked nine 30' Platted Easements, resulting in obstacles to access for sixteen Member Fee Parcels, including some owned by JCRI.

### District Court Proceedings

[¶18] In May 2016, SCRPA filed a complaint against Goddard Ranch alleging SCRPA's Members are entitled to enjoy, use, and possess the Platted Easements unhampered by structures or objects, including Goddard Ranch's fence. It also claimed the fence violated § 6.1 of the Amended Covenants which allows its Members to use the 60' Platted Easements/Community Ranch Roads for access, hiking, biking, and horseback riding. SCRPA asserted claims for trespass, ejectment, and breach of contract and sought injunctive relief and compensatory and punitive damages. It later amended its complaint to add a trespass to chattel claim based on Goddard Ranch's removal of an informational sign from the Platted Easements in July 2016 and a claim for interference with easement. It also added several claims for declaratory relief. In the meantime, JCRI filed its own

complaint against the Goddards asserting claims for trespass, ejectment, and interference with easement based on the fence intersecting its Member Fee Parcels and encroaching on the Platted Easements. It too sought compensatory and punitive damages. The district court consolidated the cases.[2]

[¶19] SCRPA eventually filed a motion for summary judgment on all of its claims except its trespass to chattel claim and certain claims for declaratory relief. Relevant here, with respect to its claims for declaratory relief, it sought summary judgment as to the following: (1) the Ranch Lands are subject to the existing property rights held by the owners of the Member Fee Parcels as explicitly defined and set forth within the Conservation Easement, the Plat, the Amended Covenants, the Design Review Manual, Goddard Ranch's Warranty Deed, and Wyoming law; (2) the Plat establishes several 60' and 30' private road and/or private access easements which are identified by location, width, and length; and (3) the Plat establishes 99 one-acre lots owned by various individuals and entities. It did not seek summary judgment on the following claims for declaratory relief: (1) "SCRPA has the right to install informational, directional, and other signage necessary and beneficial for a rural subdivision within the Platted Easements"; and (2) "SCRPA has the right to install above ground utilities and communication facilities consistent with the purposes expressed in the [Amended Covenants] which are necessary and beneficial for a rural subdivision within the Platted Easements." Over the Goddards' objection, the district court allowed JCRI to join in SCRPA's summary judgment motion.

[¶20] The Goddards responded to SCRPA and JCRI's summary judgment motion and filed their own motion for summary judgment on all of SCRPA and JCRI's claims. They maintained nothing in the Amended Covenants entitled SCRPA's Members to an unobstructed use of the entire 60' Platted Easements. Rather, they claimed § 5.7(C) of the Amended Covenants entitled them to only an unobstructed 20'. They also argued that under § 5.1 of the Amended Covenants they had the right to use the Member Fee Parcels as part of the Ranch Lands until a parcel had been placed under a Final Improvement Plan

---

[2] SCRPA also claimed Goddard Ranch breached the Amended Covenants by failing to contribute its share to the road maintenance and improvement fund and to comply with the PUD's Design Review Manual with respect to its fence. The jury found in favor of Goddard Ranch on both of these claims. On appeal, SCRPA does not challenge the jury's finding with respect to the failure of the fence to comply with the Design Review Manual. Nor does it contest the jury's finding concerning Goddard Ranch's failure to contribute to the road maintenance and improvement fund other than to note in a footnote that the district court will have to reconsider this claim on remand. Because we are not reversing or remanding other than to strike two unrelated declarations from the Final Judgment, we decline to address this issue further.

JCRI also brought claims against the Goddards for interference with contract and interference with prospective economic advantage/business expectancy based on the fence and other actions by the individual Goddards allegedly preventing the sale of its Member Fee Parcels and inducing the cancellation of a listing contract it had with a local real estate company to market those parcels. The district court granted Marcia Goddard's motion for judgment as a matter of law and the jury found in favor of the remaining Goddards on these claims. On appeal, JCRI does not challenge the district court's ruling or the jury's findings with respect to these claims and we will not address them further.

6

and no parcel had yet been placed under such plan. They further claimed § 11 of the Amended Covenants allowed them to conduct agricultural operations including grazing on the Ranch Lands and § 9.1 permitted them to construct fencing on the Ranch Lands necessary to their operations. With respect to SCRPA's trespass to chattel claim based on Goddard Ranch's removal of the sign, the Goddards claimed, *inter alia*, the sign belonged to JCRI, not SCRPA, and therefore SCRPA could not sustain its claim.[3]

[¶21] In response to the Goddards' summary judgment motion, SCRPA acknowledged there was a dispute as to the sign's ownership and withdrew its trespass to chattel claim. The district court dismissed that claim with prejudice. It also granted summary judgment to SCRPA on the three declarations stated above. It denied SCRPA and JCRI's motion and the Goddards' cross-motion in all other relevant respects. It concluded some of the language in the Covenants was ambiguous but did not identify the ambiguities. It also decided there were genuine issues of material fact in dispute including: (1) whether the Platted Easements are defined easements or cross-over easements; (2) whether the fences built on the Member Fee Parcels encumber their legal title; (3) whether the fences make any of the Member Fee Parcels inaccessible; and (4) whether the Amended Covenants require the entire Platted Easements to be unobstructed or whether they can be obstructed so long as there is an unobstructed horizontal clearance width of not less than 20' and an unobstructed vertical clearance of not less than 13.5'.

[¶22] Prior to trial, the parties agreed SCRPA's remaining claims for declaratory relief were equitable in nature and would be decided by the district court after trial. SCRPA and JCRI also dismissed their interference with easement claims. The trespass, ejectment, and breach of contract claims were tried to a jury. At the close of SCRPA and JCRI's evidence, the Goddards filed a motion for judgment as a matter of law under Rule 50, which the district court granted with respect to SCRPA and JCRI's claims for punitive damages. SCRPA and JCRI did not file a Rule 50 motion.

[¶23] The jury returned a Special Verdict finding SCRPA had failed to prove the entire width of the Platted Easements shall remain unobstructed by any structure or object placed there by Goddard Ranch; SCRPA had failed to prove the terms of the Amended Covenants; and JCRI had failed to prove Goddard Ranch was not entitled to fence across any Member Fee Parcels. Based on these findings and per the Special Verdict's instructions, the jury

---

[3] The Goddards also argued the Amended Covenants did not apply to them because they were not signed by SCRPA, the owner of the Ranch Lands at the time of the Amended Covenants' effective date. The district court rejected this argument. It concluded (1) JCRI, the owner of the Ranch Lands at the time they were sold to Goddard Ranch, signed the Amended Covenants and intended for them to apply to the purchaser of the Ranch Lands; (2) the Amended Covenants run with the land, including the Ranch Lands; (3) the Amended Covenants are incorporated into Goddard Ranch's warranty deed; and (4) in the alternative, the Amended Covenants qualify as equitable servitudes binding on all parties. Other than noting that the Amended Covenants were not signed by the Ranch Owner, the Goddards do not challenge this ruling on appeal.

did not make findings as to whether the Goddards had intentionally entered the Platted Easements and Member Fee Parcels by erecting their fence or whether Goddard Ranch had breached § 6.1 of the Amended Covenants.

[¶24] Subsequently, the Goddards filed a motion asking the district court to enter final judgment in their favor on all claims, including SCRPA's remaining requests for declaratory relief. SCRPA and JCRI also moved for entry of a final judgment. Relevant here, they acknowledged the jury's findings precluded judgment in SCRPA's favor with respect to some of its requests for declaratory relief but nevertheless claimed SCRPA was entitled to judgment declaring it has "the right to install informational, directional, and other signage necessary and beneficial for a rural subdivision within the Platted Easements" and "the right to install above ground utilities and communication facilities consistent with the purposes expressed in the [Amended Covenants] which are necessary and beneficial for a rural subdivision within the Platted Easements." They argued SCRPA was entitled to judgment on these claims because the trial evidence established (1) JCRI owns funds held in escrow pursuant to an agreement with Johnson County for the installation of information, directional, and other signage necessary and beneficial to a rural subdivision; (2) the jury instructions reflected the district court's determination that "the rights of the owner of the easement include all rights incident or necessary to realize the purposes of the easement"; and (3) the evidence at trial demonstrated that several above ground utility boxes exist within the Platted Easements and such infrastructure is not only incidental and necessary to realize the benefit of a utility easement but is evidence of how the parties historically interpreted the scope of the utility easements. The Goddards objected to entry of judgment in favor of SCRPA with respect to these claims because § 7.3 of the Amended Covenants gives SCRPA's Members only the right to install an information board within an entryway easement, which has never been defined, located, or installed, and § 5.9 specifically prohibits above ground utilities. The district court decided the requested declarations were warranted under the law of the case, the jury instructions, and the jury verdict and incorporated them into the Final Judgment. These appeals followed.

## DISCUSSION

### 1. Is the district court's denial of SCRPA and JCRI's motion for summary judgment reviewable on appeal?

[¶25] JCRI and SCRPA argue the district court improperly denied their motion for summary judgment based on its erroneous determination that the Amended Covenants' language relating to the Platted Easements and Member Fee Parcels was ambiguous. The Goddards argue SCRPA and JCRI cannot challenge the district court's denial of summary judgment on appeal because they failed to file a motion for judgment as a matter of law under Rule 50. We agree with the Goddards, in part. Regardless of whether a Rule 50 motion was filed, we will not review the district court's order denying summary judgment

8

because such orders are not reviewable on appeal following a full trial on the merits. *See Halvorson v. Sweetwater Cnty. Sch. Dist. No. 1*, 2015 WY 18, ¶ 21, 342 P.3d 395, 402 (Wyo. 2015) ("[C]hallenges to the denial of a defendant's summary judgment motion are generally not reviewable.") (citing *Irene v. Seneca Ins. Co.*, 2014 WY 145, ¶ 23, 337 P.3d 483, 492 (Wyo. 2014)); *Tribe v. Peterson*, 964 P.2d 1238, 1241 (Wyo. 1998) ("The denial of summary judgment may not be reviewed on appeal following [a] trial on the merits.") (citation omitted); *Cargill, Inc. v. Mountain Cement Co.*, 891 P.2d 57, 61 (Wyo. 1995) ("We hold that it is improper to review the denial of a motion for summary judgment following a trial on the merits."). *See also, Ortiz v. Jordan*, 562 U.S. 180, 183-184, 131 S. Ct. 884, 178 L. Ed. 2d 703 (2011) ("We granted review . . . to decide a threshold question on which the Circuits are split:  May a party, as the Sixth Circuit believed, appeal an order denying summary judgment after a full trial on the merits? *Our answer is no*.  The order retains its interlocutory character as simply a step along the route to final judgment.") (footnote omitted) (emphasis added).  The only exceptions to the rule are "when (1) summary judgment is denied based on a claim of qualified or governmental immunity, and (2) when the court grants one party's motion for summary judgment and denies the opposing party's motion for summary judgment and the court's decision completely resolves the case." *Irene*, ¶ 23 n.6, 337 P.3d 492 n.6 (citations omitted).  Neither exception applies here.

[¶26] JCRI and SCRPA acknowledge that a district court's order denying summary judgment is generally not appealable.  Nevertheless, they argue there is an exception for legal issues decided at the summary judgment stage.  According to them, because the district court's order denying their summary judgment motion resulted in a legal ruling that the Amended Covenants were ambiguous and this legal ruling became the law of the case, it is reviewable.  They rely primarily on *Pennaco Energy, Inc. v. Sorenson*, 2016 WY 34, 371 P.3d 120 (Wyo. 2016); *Essex Holding, LLC v. Basic Props., Inc.*, 2018 WY 111, ¶ 47, 427 P.3d 708, 723 (Wyo. 2018); and *Big-D Signature Corp. v. Sterrett Props., LLC*, 2012 WY 138, ¶¶ 18-19, 288 P.3d 72, 77 (Wyo. 2012).

[¶27] Pennaco entered into an agreement with Sorenson, who later sued Pennaco for breach of the agreement. *Pennaco Energy*, ¶¶ 7, 14, 371 P.3d at 122, 124.  Pennaco moved for summary judgment arguing it was not obligated to perform under the agreement because it had assigned its rights in the agreement to a third party. *Id.*, ¶ 15, 371 P.3d at 124.  The district court denied the motion, deciding "in effect" that Pennaco remained liable under the agreement. *Id.*, ¶ 16, 371 P.3d at 124.  The case proceeded to a jury trial on the issue of the amount of damages Pennaco owed for breaching the agreement. *Id.*  The jury awarded Sorenson over $1 million in damages and the district court entered judgment accordingly. *Id.*, ¶ 19, 371 P.3d at 125.

[¶28] On appeal, Pennaco argued the district court erred at the summary judgment stage when it determined as a matter of law that it remained liable to perform under the agreement after it had assigned its interest in the agreement to a third party. *Id.*, ¶ 23, 371 P.3d at 125.

9

Sorenson argued Pennaco did not preserve this issue because it failed to challenge this legal ruling through a motion for judgment as a matter of law. *Id.*, ¶ 25, 371 P.3d at 125-26. We concluded the issue was preserved. *Id.*, ¶ 26, 371 P.3d at 126. Although we recognized challenges to the denial of a summary judgment motion are generally not reviewable on appeal, we nevertheless concluded "there [was] more to the [district court's] order than just the denial of Pennaco's summary judgment motion." *Id.* We explained:

> After studying the order and rest of the record, we conclude that the order denying Pennaco's motion determined as a matter of law that Pennaco remained liable for the obligations in the [agreement]. The ruling did not leave questions of fact for a jury to determine as to Pennaco's contractual duties, but only as to the damages caused by any breach of its obligations . . . . That ruling then became the law of the case, although it was not appealable until it was subsumed into a final judgment on the entire case after the trial. As a result, the issue was preserved for our review.

*Id.* (citations omitted).

[¶29] *Pennaco* is distinguishable. The district court's order in *Pennaco* did "more" than just deny Pennaco's summary judgment motion; it also established the law of the case. *Id.* Indeed, after the district court determined at the summary judgment stage that Pennaco remained liable under the agreement, "Pennaco's continued liability [under the agreement] was treated as a foregone legal conclusion by the parties and the district court"; "it was no longer an issue for jury trial"; and the court's jury instructions "included an instruction not objected to by Pennaco indicating that the court had previously determined that Pennaco was obligated to honor the [agreement] it entered into with Sorenson, and that it was required to fulfill its obligations under the agreement regardless of whether it sold or assigned it to [a third party]." *Id.*, ¶¶ 16, 18, 371 P.3d at 124.

[¶30] In contrast, the district court's order denying SCRPA and JCRI's summary judgment motion in this case did nothing "more" than deny their summary judgment motion. The district court concluded the Amended Covenants were ambiguous and questions of material fact remained as to whether the Goddards' installation of the fence within the Platted Easements and across the Member Fee Parcels breached those Covenants and constituted a trespass. These issues were not thereafter treated as "foregone conclusion[s]" by the court and the parties but rather were sent to the jury, the parties presented evidence on them, and the district court instructed the jury concerning them. In fact, the jury was told that to find for SCRPA on its breach of contract claim, it had to find SCRPA proved the terms of the Amended Covenants and Goddard Ranch breached those terms. It was also instructed that the Platted Easements in this case are identified by location, width, and length and that the law in Wyoming is that the owner of the land

10

underlying such defined easements is prohibited from placing permanent structures or other objects within them. The jury was told if that rule applied, Goddard Ranch would be prohibited from erecting its fence within or across the Platted Easements. However, the jury was instructed that (1) Goddard Ranch believed the Amended Covenants altered the rule and allowed it to construct permanent structures and other objects within the Platted Easements, while (2) SCRPA and JCRI claimed the Amended Covenants reinforced the rule and prohibited Goddard Ranch's fence. The jury was told to consider the Amended Covenants and the rules of contract construction provided in a separate jury instruction to determine which view was correct and whether Goddard Ranch may construct its fence within the Platted Easements. In sum, unlike the district court's order denying Pennaco's motion for summary judgment, the district court's order denying SCRPA and JCRI's summary judgment motion in this case did not establish the "law of the case."

[¶31] In *Essex Holding,* Essex and Basic each owned parcels in a shopping center subject to restrictive covenants which granted each parcel owner an access easement to and from a parking lot. *Essex Holding, LLC*, ¶ 2, 427 P.3d at 713. Basic sought to develop its parcel but such development required a modification of the covenants. *Id.*, ¶ 6, 427 P.3d at 713. Modification of the covenants, in turn, required Essex's consent, which was "not [to] be unreasonably withheld." *Id.*, ¶ 3, 427 P.3d at 713. Essex refused to consent. *Id.*, ¶¶ 15-17, 427 P.3d at 715. Essex sued Basic seeking to quiet title in the access easement and damages for Basic's anticipatory repudiation of the covenants; Basic counterclaimed asserting, among other things, that Essex breached the covenants by unreasonably withholding its consent to Basic's proposed amendment to the covenants. *Id.*, ¶ 18, 427 P.3d at 715. Essex moved for summary judgment on Basic's counterclaim. *Id.*, ¶ 19, 427 P.3d at 715. The district court denied the motion and the case proceeded to trial. *Id.*, ¶¶ 19, 21, 427 P.3d at 715-16. The jury entered a verdict in favor of Basic, finding Essex had unreasonably withheld its consent to Basic's request to modify the covenants. *Id.*, ¶ 23, 427 P.3d at 716. Essex filed a post-trial motion, which the district court denied. *Id.*, ¶ 25, 427 P.3d at 716. On appeal, Essex argued Basic's counterclaim was not ripe because it did not obtain consent from another parcel owner with respect to its proposed modification and the covenants did not permit money damages. *Id.*, ¶ 46, 427 P.3d at 722.

[¶32] We concluded this argument related to the district court's denial of Essex's summary judgment motion on whether Basic could prove its counterclaim. *Id.*, ¶ 47, 427 P.3d at 722. We recognized the denial of Essex's summary judgment motion was not appealable but concluded the alleged legal errors in the district court's denial of Essex's motion merged into and were preserved for our review in the district court's order denying Essex's post-trial motion, which was appealable. *Id.*, ¶¶ 25, 47, 427 P.3d at 716, 723. For this proposition, we cited *State Farm Mutual Auto Ins. Co. v. Shrader*, 882 P.2d 813, 820 (Wyo. 1994). But *State Farm* went further, explaining: "[E]ven in an appeal of a final judgment, *the pre-trial denial of a motion for summary judgment is not generally reviewed. . . . The denial of the summary judgment becomes, in effect, moot except in rare cases*." *Id*. (citations omitted) (emphasis added).

[¶33]  We found "convincing" reasons for the rule:

> The final judgment in a case can be tested upon the record
> made at trial, not the record made at the time summary
> judgment was denied. Any legal rulings made by the trial court
> affecting that final judgment can be reviewed at that time in
> light of the full record. This will prevent a litigant who loses a
> case, after a full and fair trial, from having an appellate court
> go back to the time when the litigant had moved for summary
> judgment to view the relative strengths and weaknesses of the
> litigants at that earlier stage.  Were we to hold otherwise, one
> who had sustained his position after a fair hearing of the whole
> case might nevertheless lose, because he had failed to prove his
> case fully on an interlocutory motion.

*Id.* at 820 (quoting *Evans v. Jensen*, 655 P.2d 454, 459 (Idaho 1982)).

[¶34]  These policies militate against our review of the district court's order denying
SCRPA and JCRI's motion for summary judgment.  SCRPA and JCRI do not seek review
of the Final Judgment with respect to this issue.[4]  Rather, they want us to step back in time
to the summary judgment proceedings and decide, based on that record, that the district
court should have granted summary judgment in their favor.  But the trial record
"supersedes the record existing at the time of the summary-judgment motion." *Ortiz*, 562
U.S. at 184, 131 S.Ct. at 889, 178 L.Ed.2d 703.  Moreover, SCRPA and JCRI lost after
presenting their case to a jury.  To go back now would potentially prejudice the Goddards,
who won at trial.

[¶35]  SCRPA and JCRI's reliance on *Big-D Signature Corp.* fares no better.  Big-D
contracted to build a home for several LLCs on Mr. Sterrett's property.  *Big-D Signature
Corp.*, ¶ 1, 288 P.3d at 73.  The contract was modified twice; the second modification
contained a new contract price of $1,509,811.  *Id.*, ¶ 4, 288 P.3d at 74.  Disputes arose
between the parties and each sued the other claiming breach of contract.  *Id.*, ¶ 5, 288 P.3d
at 74.  The district court granted Big-D's motion for partial summary judgment finding
there was a valid, unambiguous contract with two modifications and the total contract price
was $1,509,811.  *Id.*, ¶ 7, 288 P.3d at 75.  The court eventually dismissed the parties' claims
without a trial.  *Id.*, ¶ 8, 288 P.3d at 75.  On appeal, the LLCs and Mr. Sterrett challenged
the district court's order granting Big-D's summary judgment motion.  *Id.*, ¶ 2, 288 P.3d at

---

[4] Had SCRPA and JCRI wanted to challenge the Final Judgment with respect to this issue, they should have
filed a motion for judgment as a matter of law in the district court, based on the facts proven at trial.  *See
Tribe*, 964 P.2d at 1241 ("The proper procedural mechanism for challenging an adverse judgment,
following a trial on the merits, is a motion for judgment as a matter of law.") (citing *Cargill, Inc.*, 891 P.2d
at 61).  They did not.

74. Big-D argued the order was not properly before us because it was not identified in the notice of appeal or attached as an appendix as required by the rules of appellate procedure. *Id.*, ¶ 12, 288 P.3d at 76. We concluded we had jurisdiction to review the order because it was subsumed within the district court's dismissal order, which was included in the notice of appeal. *Id.*, ¶ 18, 288 P.3d at 77.

[¶36] We are not concerned with SCRPA and JCRI's failure to identify the district court order denying summary judgment in their Notice of Appeal or to attach it thereto. They did. Moreover, Big-D involved the <u>grant</u> of partial summary judgment, not the denial thereof. Therefore, there was no trial on the merits with respect to the issues involved.[5]

[¶37] The special concurrence/dissent would adopt an additional exception to the rule that one may not appeal a denial of summary judgment, but must raise that issue again through a proper rule 50 motion. This exception would permit an appeal, based on facts presented at summary judgment and not on the facts presented at trial, when the trial court denies summary judgment because it finds the contract ambiguous. There are practical reasons why we have not adopted such an exception. First, there is a strong policy in support of procedures which give trial courts the opportunity to correct mistakes. *See, e.g., Goggins v. Harwood,* 704 P.2d 1282, 1289 (Wyo. 1985) and *Haderlie v. Sondergeroth,* 866 P.2d 703, 715 (Wyo. 1993). Although the concurrence/dissent argues that "there was no likelihood that renewed argument would have caused the district court judge to change his mind," whether a particular trial judge would give fair consideration to a rule 50 motion should not determine whether our rules give the trial judge the opportunity to correct a mistake. We should presume that a trial judge would do so. Second, although determination of whether a contract is ambiguous is a question of law, in some circumstances we permit presentation of evidence outside the four corners of the contract in making that determination. *See Mathisen v. Thunder Basin Coal Co., LLC,* 2007 WY 161 ¶12, 169 P.3d 61, 65 (Wyo. 2007). To avoid inevitable questions about whether a summary judgment denial was based on a purely legal issue or a mixed issue of fact and law, it is preferable to require the issue to be properly raised under rule 50, based on the trial evidence. Making a rule 50 motion is not difficult, and the requirement of such a motion is not novel. Appellants easily could and should have done so.

---

[5] SCRPA and JCRI also rely on *Ortiz* and *Copar Pumice Co. v. Morris*, 639 F.3d 1025, 1031 (10th Cir. 2011). These cases are not helpful to them. In *Ortiz*, 562 U.S. at 183-84, 131 S.Ct. at 1188-89, 178 L.Ed.2d 703, the Supreme Court held a party may not appeal an order denying summary judgment after a full trial on the merits. In *Copar*, the Tenth Circuit noted it had recognized that denials of summary judgment based on purely legal issues are reviewable on appeal after final judgment but that "[s]ome language in *Ortiz* appear[ed] to undermine [that precedent]." *Id.,* 639 F.3d at 1031 (citations omitted). Nevertheless, it did not need to decide whether *Ortiz* overruled that precedent because the summary judgment motions at issue were denied based on factual, rather than legal, issues. *Id.* at 1031-32.

[¶38]  Because an order denying summary judgment is not subject to review after a full trial on the merits, we do not consider whether the district court erred in denying SCRPA and JCRI's motion for summary judgment.

## *2. Did JCRI and SCRPA waive their insufficiency of the evidence arguments by failing to file a motion for judgment as a matter of law?*

[¶39]  SCRPA and JCRI argue there was insufficient evidence supporting the jury's findings that (1) SCRPA had failed to prove the entire width of the Platted Easements must remain unobstructed by any structure or object placed there by Goddard Ranch; (2) SCRPA had failed to prove the terms of the Amended Covenants; and (3) JCRI had failed to prove Goddard Ranch is not entitled to fence across any of the Member Fee Parcels.  The Goddards claim SCRPA and JCRI have waived these arguments because they failed to file a motion for judgment as a matter of law.  We again agree with the Goddards.

[¶40]  "It is thoroughly established with some limited exceptions that the sufficiency of the evidence is not reviewable on appeal unless a motion for [judgment as a matter of law] was made in the trial court."[6]  *Belle Fourche Pipeline Co. v. Elmore Livestock Co.*, 669 P.2d 505, 512 (Wyo. 1983) (citations omitted); *Joly v. Safeway Stores, Inc.*, 502 P.2d 362, 364 (Wyo. 1972) ("In the absence of [a] motion for a [judgment as a matter of law] on the question of liability[,] the sufficiency of the evidence may not be urged upon appeal and is not subject to review.").  *See also*, *Ortiz*, 562 U.S. at 189, 131 S.Ct. at 891-92, 178 L.Ed.2d 703 ("Nor did [the defendants] avail themselves of Federal Rule of Civil Procedure 50(b), which permits the entry, post verdict, of judgment for the verdict loser if the court finds that the evidence was legally insufficient to sustain the verdict.  *See* Rule 50(a), (b).  Absent such a motion, we have repeatedly held, an appellate court is 'powerless' to review the sufficiency of the evidence after trial.") (quoting *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 405, 126 S. Ct. 980, 163 L. Ed. 2d 974 (2006)); Wright & Miller, Federal Practice and Procedure, § 2536 ("It is thoroughly established by numerous judicial pronouncements that the sufficiency of the evidence is not reviewable on appeal unless a motion for judgment as a matter of law under Federal Rule 50 was made in the trial court.") (collecting cases at n.1).

[¶41]  The reasons for the rule are three-fold.  *Little v. Bankers Life & Cas. Co.*, 426 F.2d 509, 511 (5th Cir. 1970).  First, "a litigant may not gamble on the jury's verdict and then later question the sufficiency of the evidence on appeal."  *Id*.  Second, a party who does not move for judgment as a matter of law "must have been of the view that the evidence made a case for the jury; he should not be permitted on appeal to impute error to the trial judge for sharing that view."  *Id*.  Finally, requiring a party to alert the court and opposing party of a claimed deficiency in the evidence prior to the jury deliberating allows the

---

[6] Prior to 1993, a "judgment as a matter of law" was referred to as a "directed verdict."  *Hatch v. State Farm Fire & Cas. Co.*, 930 P.2d 382, 394 (Wyo. 1997).

14

opposing party "to do whatever can be done to mend his case." *Quinn v. Sw. Wood Prods., Inc.*, 597 F.2d 1018, 1025 (5th Cir. 1979). "But if the court and [opposing] counsel learn of such a claim for the first time after verdict, both are ambushed and nothing can be done except by way of a complete new trial. It is contrary to the spirit of our procedures to permit counsel to be sandbagged by such tactics or the trial court to be so put in error." *Id.*

[¶42] SCRPA and JCRI concede they did not file a Rule 50 motion in the district court but nevertheless claim their failure to do so does not preclude our review of their insufficiency of the evidence arguments. According to them, we have reviewed such arguments in a number of cases even though they were not raised in a Rule 50 motion in the district court. The cases cited, however, are not persuasive. They either (1) precede our announcement of the rule in *Belle Fourche Pipeline Co.* and *Joly*; (2) do not discuss, let alone mention, the Rule 50 motion requirement; and/or (3) are silent as to whether a Rule 50 motion was or was not filed. *See, e.g., Mgmt. Nominees, Inc. v. Skowronska*, 2019 WY 105, ¶¶ 19-22, 450 P.3d 672, 678 (Wyo. 2019) (second scenario); *Sun Land & Cattle Co. v. Brown*, 394 P.2d 387, 388-89 (Wyo. 1964) (first scenario); *Kahler v. Martin*, 570 P.2d 720, 720-21 (Wyo. 1977) (first scenario); *Tatman v. Cordingly*, 672 P.2d 1286, 1288 (Wyo. 1983) (third scenario); *Landmark, Inc. v. Stockmen's Bank & Tr. Co.*, 680 P.2d 471, 475, 477 (Wyo. 1984) (second scenario); *Turcq v. Shanahan*, 950 P.2d 47, 50-52 (Wyo. 1997) (third scenario). Under such circumstances, we decline to read any of them as dispensing with the requirement of a Rule 50 motion in order to preserve insufficiency of the evidence arguments for appeal.

[¶43] SCRPA and JCRI waived their insufficiency of the evidence arguments by failing to file a motion for judgment as a matter of law in the district court.

### 3. *Did SCRPA and JCRI waive their argument that the Special Verdict and Final Judgment are inconsistent by preparing and submitting the Final Judgment for the district court's approval?*

[¶44] SCRPA and JCRI argue the jury's Special Verdict essentially found the Goddards may construct a barbed-wire fence within and across the Platted Easements. According to them, that finding is inconsistent with the Final Judgment which declares SCRPA has the right to install "informational, directional, and other signage" and "above ground utilities and communication facilities" within the Platted Easements. They contend SCRPA cannot place signage and above ground utilities and communication facilities within the Platted Easements if Goddard Ranch is also allowed to place a barbed-wire fence within them, as the jury found. Because the Special Verdict and Final Judgment cannot be reconciled as a matter of law, they contend reversal is required. The Goddards argue SCRPA and JCRI have waived this argument because they requested, prepared, and submitted the Final Judgment which the district court approved. Once again, the Goddards are correct.

15

[¶45] SCRPA and JCRI prepared and submitted the Final Judgment, which included the subject declarations, for the court's approval. Under the invited error doctrine, they cannot now complain on appeal of errors they themselves induced the court to commit. *See In re Adoption of CF*, 2005 WY 118, ¶ 27, 120 P.3d 992, 1002 (Wyo. 2005) ("[A] party does not get to complain on appeal of errors which he himself induced or provoked the court or the opposite party to commit.") (quotations omitted). *See also, Platt v. Platt*, 2011 WY 155, ¶ 21, 264 P.3d 804, 811 (Wyo. 2011) ("'If a party requests or moves the court to make a ruling which is actually erroneous and the court does so, that party cannot take advantage of the error on appeal or review.'") (quoting *Robbins v. Robbins*, 2002 WY 80, ¶ 10, 46 P.3d 880, 883 (Wyo. 2002)).

[¶46] SCRPA and JCRI argue that while the invited error doctrine may seem "at first blush" to apply, the doctrine is much narrower. According to them, they are not appealing the Final Judgment with respect to the declarations at issue as they admit they invited and induced the district court to make those declarations. Rather, they say their argument focuses on the district court's Final Judgment and Special Verdict being irreconcilable as a matter of law. They explain:

> SCRPA and the Members cannot exercise their rights and utilize areas within the defined Platted Easements for signage and above ground utilities/communications facilities (and other activities as expressly provided for in the Covenants) where Goddard Ranch is able to block access by cutting through that defined area with barbed-wire fencing. As such, the invited error doctrine does not apply to this circumstance. *See generally Bromley v. State*, 2007 WY 20, ¶ 26, 150 P.3d 1202, 1211 (Wyo. 2007) (illuminating circumstances where the invited error doctrine does not apply); *Wardell v. McMillan*, 844 P.2d 1052, 1065 (Wyo. 1992) (same).

[¶47] Although not entirely clear, it appears SCRPA and JCRI believe there is an exception to the invited error doctrine when a district court errs as a matter of law in entering a final judgment that is inconsistent with the jury's verdict. We have found no such exception and the cases they cite do not support such exception. *Bromley*, ¶¶ 23-26, 150 P.3d at 1210-11 (rejecting State's argument that Mr. Bromley had waived his argument that a witness's testimony was erroneously admitted under Wyoming Rule of Evidence 404(b) where Mr. Bromley objected to the testimony but also mistakenly informed the court that it had already ruled on the admissibility of the testimony prior to trial; the invited error doctrine did not apply to these circumstances because Mr. Bromley did not solicit or consent to the witness' testimony but rather objected to it); *Wardell*, 844 P.2d at 1065 (concluding invited error doctrine did not preclude Mr. Wardell's challenge to district court's order allowing pretrial settlements to be disclosed to the jury; Mr. Wardell objected

16

to the disclosure of the settlements and only sought disclosure of the settlements' amounts after the district court concluded Wyoming law required the settlements to be disclosed).[7]

[¶48] SCRPA and JCRI waived their argument that the Final Judgment and Special Verdict are inconsistent by inviting the complained of error. Moreover, as we will now explain, the district court erred in including in the Final Judgment the subject declarations as there was no justiciable controversy with respect to these matters. Because those declarations must be struck from the Final Judgment, SCRPA and JCRI's argument that those declarations are inconsistent with the Special Verdict is moot.

4. ***Was there a justiciable controversy with respect to SCRPA's claims for declaratory relief concerning its right to install signage and above ground utilities and communication facilities within the Platted Easements?***

[¶49] Goddard Ranch argues, *inter alia*, that the district court's declarations that SCRPA has "the right to install informational, directional, and other signage necessary and beneficial for a rural subdivision within the Platted Easements" and "the right to install above ground utilities and communication facilities consistent with the purposes expressed in the [Amended Covenants] which are necessary and beneficial for a rural subdivision within the Platted Easements" are impermissible advisory opinions because there was no justiciable controversy concerning such signs, utilities, and communication facilities. SCRPA argues it presented a justiciable controversy with respect to these claims. It points to its complaint, wherein it alleged Luke Goddard willfully, and without regard to SCRPA Members' rights, removed an informational sign erected by SCRPA within the Platted Easements and, after removing the sign, dragged it approximately 100 yards from its location. It claimed this action infringed upon its Members' rights under the Conservation Easement, Plat, Amended Covenants, the Design Review Manual, Goddard Ranch's Warranty Deed, and Wyoming law. It also points out that while the parties agreed the district court would decide the declaratory relief claims after trial, there was evidence concerning them at trial. John Jenkins, SCRPA's President, testified as to the necessity for

---

[7] SCRPA and JCRI also claim the Final Judgment and Special Verdict are inconsistent because the Final Judgment declares "the Plat establishes several 60' and 30' private road and/or private access easements which are identified by location, width, and length" while the Special Verdict essentially found Goddard Ranch may construct a barbed-wire fence within and across the Platted Easements. According to them, these two findings are inconsistent because under *Lamb v. Wyoming Game & Fish Comm'n*, 985 P.2d 433, 438 (Wyo. 1999), a holder of an easement defined by location, width and length is entitled to use the entire width of such easement unobstructed by structures or other objects like a fence. SCRPA and JCRI raised the *Lamb* argument in their motion for summary judgment, which was denied. The issue was sent to the jury which, although instructed of the *Lamb* rule, found the Amended Covenants altered the rule and allowed Goddard Ranch to construct fences. SCRPA and JCRI are again attempting to challenge the district court's order denying their summary judgment motion; as we have already explained, that order is not reviewable on appeal. Moreover, they proposed the jury instructions on this issue and prepared and submitted the Final Judgment. They cannot now complain of an error they invited.

17

signage, including signs related to road safety. He also testified to Goddard Ranch's removal of three informational and marketing signs that had been attempted to be placed within the Platted Easements, two in March 2015 and one in July 2016. Pictures of these signs, including Luke Goddard's removal of the latter sign, were admitted as evidence. With respect to above ground utilities and communication facilities, SCRPA says Mr. Jenkins testified about the already existing above ground utilities, including junction boxes. It claims that due to Goddard Ranch's fence, its members cannot now access areas where additional necessary utilities are to be installed. For the fourth time, we agree with Goddard Ranch.

[¶50] The Uniform Declaratory Judgments Act permits courts to "declare rights, status and other legal relations whether or not further relief is or could be claimed." Wyo. Stat. Ann. § 1-37-102 (LexisNexis 2019). To maintain a declaratory judgment action, the challenger must present a justiciable controversy. *The Tavern, LLC v. Town of Alpine*, 2017 WY 56, ¶ 25, 395 P.3d 167, 174 (Wyo. 2017); *see also Rocky Mountain Oil & Gas Ass'n v. State*, 645 P.2d 1163, 1168 (Wyo. 1982). "Put plainly, a justiciable controversy is a controversy fit for judicial resolution." *The Tavern, LLC,* ¶ 25, 395 P.3d at 174. The declaratory judgment procedure cannot be used to secure an advisory judgment. *Rocky Mountain Oil & Gas Ass'n*, 645 P.2d at 1168.

[¶51] To establish a justiciable controversy under the Declaratory Judgments Act, the four-factor *Brimmer* test must be met. *Leavitt v. State ex rel. Wyoming Dept. of Transportation*, 2017 WY 149, ¶ 7, 406 P.3d 1266, 1269 (Wyo. 2017) (citing *Brimmer v. Thomson*, 521 P.2d 574 (Wyo. 1974)). Those factors are:

> 1. The parties have existing and genuine, as distinguished from theoretical, rights or interests.
> 2. The controversy must be one upon which the judgment of the court may effectively operate, as distinguished from a debate or argument evoking a purely political, administrative, philosophical or academic conclusion.
> 3. It must be a controversy the judicial determination of which will have the force and effect of a final judgment in law or decree in equity upon the rights, status or other legal relationships of one or more of the real parties in interest, or, wanting these qualities to be of such great and overriding public moment as to constitute the legal equivalent of all of them.
> 4. The proceedings must be genuinely adversary in character and not a mere disputation, but advanced with sufficient militancy to engender a thorough research and analysis of the major issues.

*Id.* (quoting *William F. West Ranch, LLC v. Tyrrell*, 2009 WY 62, ¶ 12, 206 P.3d 722, 727 (Wyo. 2009), and citing *Brimmer*, 521 P.2d at 578).[8]

[¶52]   Under the first *Brimmer* factor, SCRPA must show a "tangible interest which has been harmed." *Allred v. Bebout*, 2018 WY 8, ¶ 44, 409 P.3d 260, 273 (Wyo. 2018) (quoting *William F. West Ranch*, ¶ 22, 206 P.3d at 730).   SCRPA cannot satisfy this factor with respect to either declaration.

[¶53]   Mr. Jenkins testified at trial that before Goddard Ranch purchased the Ranch Lands, there were two signs within the Platted Easements at the north and south entries of the PUD.   He told the jury that after Greg Goddard took those signs down in February or March 2015, JCRI eventually installed an informational/marketing sign within a 60' Platted Easement at the south entry on July 8, 2016.   That same day, Goddard Ranch had the sign removed; it was placed lying down on the Ranch Lands.

[¶54]   SCRPA never brought any claims with respect to Greg Goddard's removal of the two signs in early 2015.   While SCRPA alleged in its complaint that Goddard Ranch had improperly removed the informational/marketing sign from the Platted Easements in July 2016, this allegation formed the basis for its trespass to chattel claim which it later withdrew due to conflicting evidence concerning the sign's ownership.   This evidence was later admitted at trial, but not for purposes of establishing any of SCRPA's claims for declaratory relief.   Rather, it was admitted to support <u>JCRI's</u> claims that the Goddards' actions prevented the sale of its Member Fee Parcels and induced the cancellation of its contract with a local real estate company to market those lots.   *See, supra,* n. 2.   Indeed, the sign belonged to JCRI.   There was never any attempt by SCRPA to install "informational" signage within the Platted Easements, nor any allegations that Goddard Ranch or its fence prevented SCRPA from doing so.

[¶55]   Mr. Jenkins testified Article 17 of the Amended Covenants allowed JCRI to install marketing signs within the Platted Easements.   Yet, when confronted with its language, he admitted Article 17 only required SCRPA, not the Ranch Owner, to cooperate with JCRI in marketing and selling the Member Fee Parcels.[9]   He also admitted Article 17 says nothing about JCRI being able to place a marketing sign within the Platted Easements, which are located on the Ranch Lands.   Moreover, this testimony related to JCRI's, not SCRPA's, right to install marketing signs within the Platted Easements.

---

[8] The *Brimmer* test may be relaxed in cases involving matters of great public interest or importance. *Leavitt,* ¶ 7, 406 P.3d at 1269 (quoting *Maxfield v. State*, 2013 WY 14, ¶ 20, 294 P.3d 895, 900 (Wyo. 2013)).   This is not such a case and neither party has argued otherwise.

[9] Article 17 provides in relevant part: "[SCRPA] shall cooperate with [JCRI] in marketing and sale of [Members' Interests] until ninety-nine (99) [Members' Interests] have been sold by [JCRI]."

19

[¶56] SCRPA's complaint contained no allegations concerning "directional" or "other signage." Mr. Jenkins testified Johnson County requires "safety" signage including speed limit signs, street signs, stop signs, and yield signs and there are funds in escrow to install such signs. But he also testified the obligation to install such signage belonged to JCRI, not SCRPA. Moreover, he admitted the obligation is not triggered until homes are built within the PUD. No homes have been built within the PUD and there was no evidence that a home would be built in the near future. Furthermore, there was no claim or facts that Goddard Ranch's fence prevented such safety signage or that Goddard Ranch would otherwise prohibit such signage within the Platted Easements. There simply was no controversy with respect to such signs.

[¶57] With respect to above ground utilities and communication facilities, SCRPA made no allegations in its complaint concerning the need to install such utilities and facilities within the Platted Easements, what utilities and communication facilities it contemplated installing, how such utilities and facilities would be consistent with the purposes expressed in the Amended Covenants and necessary and beneficial for a rural subdivision, or that Goddard Ranch's fence or other actions prevented such installation. Mr. Jenkins testified at trial about the already existing above ground utilities within the Platted Easements. But he did not claim Goddard Ranch's fence interfered with these utilities. Nor did Goddard Ranch challenge SCRPA's right to keep these above ground utilities within the PUD, even though Mr. Jenkins admitted the Amended Covenants required utilities to be underground. Mr. Jenkins testified "we" might install potable water, a waterline, and fiberoptic cable within the Platted Easements. It is unclear if he was referring to SCRPA or JCRI. In any event, "we will not issue advisory opinions addressing [such] future speculative matters." *Catamount Constr. v. Timmis Enters.*, 2008 WY 122, ¶ 19, 193 P.3d 1153, 1159 (Wyo. 2008) (citations omitted).

[¶58] SCRPA failed to present a justiciable controversy with respect to its claims for declaratory relief concerning its "right to install informational, directional, and other signage necessary and beneficial for a rural subdivision within the Platted Easements" and its "right to install above ground utilities and communication facilities consistent with the purposes expressed in the [Amended Covenants] which are necessary and beneficial for a rural subdivision within the Platted Easements." We reverse the entry of judgment with respect to these claims and remand for the district court to strike these declarations from the Final Judgment.

## CONCLUSION

[¶59] The district court's order denying SCRPA and JCRI's summary judgment motion is not reviewable on appeal; SCRPA and JCRI have waived their insufficiency of the evidence arguments by failing to file a motion for judgment as a matter of law in the district court; and the invited error doctrine precludes their argument that the Special Verdict and Final Judgment are inconsistent. There was no justiciable controversy before the district

court with respect to SCRPA's claims for declaratory relief concerning its "right to install informational, directional, and other signage necessary and beneficial for a rural subdivision within the Platted Easements" and its "right to install above ground utilities and communication facilities consistent with the purposes expressed in the [Amended Covenants] which are necessary and beneficial for a rural subdivision within the Platted Easements." We reverse the Final Judgment as to these claims and remand to the district court to remove these declarations from the Final Judgment. The Final Judgment is affirmed in all other respects.

**FOX, Justice,** concurring in part and dissenting in part, in which **LAVERY, District Judge,** joins.

[¶60]  I concur in most of the majority's opinion, but I write separately because I believe that denial of summary judgment based on a purely legal issue should be appealable without additional procedural hurdles.

[¶61]  The district court ruled on summary judgment that "some of the language in the Amended Covenants is ambiguous when the document is read as a whole, leaving some provision[s] open for interpretation."  This ruling became the law of the case and determined its course.[10]  In accordance with our well-established precedent, the ambiguity ruling greatly altered the rules of contract interpretation, and the job of interpreting the Amended Covenants was transferred from the judge to the jury.  The majority now concludes that SCRPA and JCRI could only challenge the district court's finding of ambiguity by "fil[ing] a motion for judgment as a matter of law in the district court, based on the facts proven at trial."  But no facts proven at trial could conceivably affect the purely legal ruling that the Amended Covenants were ambiguous and, therefore, the requirement to file another motion to preserve the issue for appeal is a meaningless exercise that serves only as a trap for the unwary.  The right to appeal to the Supreme Court is a constitutional right that should not be denied without justification.  Wyo. Const. art. 5, § 18.

[¶62]  I agree with the rationale underlying the general rule that denial of summary judgment is not appealable and, for that reason, I concur in the majority's conclusion that JCRI and SCRPA waived their insufficiency of the evidence argument by failing to file a motion for judgment as a matter of law.

> Before granting summary judgment, a court must determine whether there are any genuine issues of material fact in dispute

---

[10] We discussed "law of the case" doctrine in *BTU W. Res., Inc. v. Berenergy Corp.*, 2019 WY 57, ¶ 26, 442 P.3d 50, 58 (Wyo. 2019):

> "Under the 'law of the case' doctrine, a court's decision on an issue of law made at one stage of a case becomes a binding precedent to be followed in successive stages of the same litigation." *Triton Coal Co. v. Husman, Inc.*, 846 P.2d 664, 667 (Wyo. 1993) (citing 1B James W. Moore et al., *Moore's Federal Practice* ¶ 0.404[1] (2d ed. 1983)).  The doctrine is "designed to avoid repetitious litigation and to promote consistent decision making." *Triton Coal*, 846 P.2d at 667.  "Without something like it, an adverse judicial decision would become little more than an invitation to take a mulligan, encouraging lawyers and litigants alike to believe that if at first you don't succeed, just try again." *Entek* [*GRB, LLC v. Stull Ranches, LLC*], 840 F.3d [1239,] 1240 [(10th Cir. 2016)].  The doctrine, therefore, provides "incentive for parties to put their best effort into their initial submissions," encourages litigants to present all available claims and defenses, and avoids wasting judicial resources. *Id.* at [1240].

and, if not, whether the moving party is entitled to judgment as a matter of law. This two-pronged analysis is inapplicable if a motion for summary judgment is denied and the case is heard on its merits. The first prong of summary judgment analysis is rendered moot when the trier of fact accepts a particular set of facts at trial.

*Cargill, Inc. v. Mountain Cement Co*., 891 P.2d 57, 61 (Wyo. 1995) (citation omitted). I also agree that, after trial, sufficiency of the evidence issues must be preserved for appeal by Rule 50 motions.

A postverdict motion is necessary because "[d]etermination of whether a new trial should be granted or a judgment entered under Rule 50(b) calls for the judgment in the first instance of the judge who saw and heard the witnesses and has the feel of the case which no appellate printed transcript can impart." Moreover, the "requirement of a timely application for judgment after verdict is not an idle motion" because it "is . . . an essential part of the rule, firmly grounded in principles of fairness."

*Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 401, 126 S.Ct. 980, 985-86, 163 L.Ed.2d 974 (2006) (citations and footnote omitted).

[¶63] However, "questions of contract interpretation are different. They involve pure questions of law unrelated to the sufficiency of the trial evidence, so it's not necessary for summary-judgment losers to relitigate purely legal issues of contract interpretation" in a Rule 50 motion. *Lawson v. Sun Microsystems, Inc.*, 791 F.3d 754, 761 (7th Cir. 2015). Contrary to the majority's assertion, when the issue is purely legal, the familiar argument that the "final judgment in a case can be tested upon the record made at trial, not the record made at the time summary judgment was denied," *State Farm Mut. Auto. Ins. Co. v. Shrader*, 882 P.2d 813, 820 (Wyo. 1994), does not bear scrutiny. When summary judgment is denied because there are facts in dispute, the case is heard on its merits, and the fact-finder weighs the evidence and evaluates credibility. In contrast, the Amended Covenants are the only evidence relevant to whether they are ambiguous, and the record made at trial does not change that. The majority relies on *Cargill*, *Shrader*, and several other Wyoming cases for the rule that summary judgment denials cannot be appealed. However, none of them addresses the question of whether there should be an exception when the denial is based on a purely legal issue, and we should not automatically apply the rule without a sound reason. "Because this issue did not depend on an evaluation of the sufficiency of the evidence, . . . the ordinary rationale for declining to review a denial of summary judgment does not apply." *Chemetall GMBH v. ZR Energy, Inc.*, 320 F.3d 714, 718 (7th Cir. 2003). I agree with the numerous courts that have found a Rule 50 motion to preserve

23

a summary judgment denial of a purely legal issue serves no purpose. *Lawson*, 791 F.3d at 761; *Feld v. Feld*, 688 F.3d 779, 781-82 (D.C. Cir. 2012); *Owatonna Clinic—Mayo Health Sys. v. Med. Protective Co.*, 639 F.3d 806, 810-11 (8th Cir. 2011); *Rothstein v. Carriere*, 373 F.3d 275, 284 (2d Cir. 2004); *Banuelos v. Construction Laborers' Trust Funds*, 382 F.3d 897, 902-03 (9th Cir. 2004); *United Technologies Corp. v. Chromalloy Gas Turbine Corp.*, 189 F.3d 1338, 1344 (Fed. Cir. 1999); *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997); *Ruyle v. Cont'l Oil Co.*, 44 F.3d 837, 841-42 (10th Cir. 1994); *Ching v. Case*, 449 P.3d 1146, 1167 n.36 (Haw. 2019); *Normandeau v. Hanson Equip., Inc.*, 215 P.3d 152, 159-60 (Utah 2009).

[¶64]   The United States Supreme Court's decision in *Ortiz v. Jordan*, 562 U.S. 180, 131 S.Ct. 884, 178 L.Ed.2d 703 (2011) is not to the contrary.  Although the Court framed the question as: "May a party . . . appeal an order denying summary judgment after a full trial on the merits?" and answered "[N]o," the Court expressly rejected the appellants' argument they were appealing "a purely legal issue" that could be resolved "with reference only to undisputed facts."  *Id.* at 183-84, 190, 131 S.Ct. at 888-89, 892.  The Court identified numerous relevant, disputed facts and found appellants' claims did not present "purely legal" issues. *Id.* at 190-91, 131 S.Ct. at 892-93.  The Court "left open the question whether the same rule applies to preserving 'purely legal' arguments that were rejected at summary judgment." *Feld*, 688 F.3d at 781-82 (citing *Ortiz*, 562 U.S. at 189-90, 131 S.Ct. at 892).  In contrast to the basis for summary judgment in *Ortiz*, the district court's summary judgment decision that the Amended Covenants were ambiguous was a purely legal issue, which no amount of facts presented at trial could affect.  *See also Copar Pumice Co., Inc. v. Morris*, 639 F.3d 1025, 1031 (10th Cir. 2011) ("Appellants attempt to characterize their summary judgment motions as raising pure issues of law.  But we have previously cautioned that 'prudent counsel will not rely on their own interpretations of whether an issue is purely a question of law or fact.'  The district court was abundantly clear that it was denying appellants' qualified immunity motion for summary judgment because 'there are genuine issues of material fact[.]'") (citation omitted).

[¶65]   Further, I disagree with the majority's contention that "the district court's order denying SCRPA and JCRI's summary judgment motion in this case did nothing 'more' than deny their summary judgment motion."  In fact, that order, like the order denying summary judgment in *Pennaco Energy, Inc. v. Sorenson*, 2016 WY 34, 371 P.3d 120 (Wyo. 2016), determined the course of the case.  First,

> [t]he initial question of whether the contract is capable of being understood in only one way is a question of law for the court. If the court determines that the contract is capable of being understood in only one way, then the language used in the contract expresses and controls the intent of the parties. In such case, the next question, what is that understanding or meaning, is also a question of law.

24

*M & M Auto Outlet v. Hill Inv. Corp.*, 2010 WY 56, ¶ 12, 230 P.3d 1099, 1104 (Wyo. 2010) (quoting *Examination Mgmt. Servs., Inc. v. Kirschbaum*, 927 P.2d 686, 689 (Wyo. 1996)). Instead of resolving the legal question of what the contract terms provided, the court left that determination to the jury.

[¶66] Moreover, the district court's finding of ambiguity significantly altered the rules of contract interpretation the jury employed. When the provisions in the contract are clear and unambiguous, the Court looks only to the four corners of the document to arrive at the intent of the parties. *Davison v. Wyo. Game & Fish Comm'n*, 2010 WY 121, ¶ 9, 238 P.3d 556, 560 (Wyo. 2010). However, extrinsic evidence may be considered to interpret an ambiguous contract. *Id.* Here, the jury was instructed that SCRPA had the burden of proving, by a preponderance of the evidence, the terms of the Amended Covenants; to apply the rules of interpretation of an ambiguous contract, including all "the surrounding circumstances of the transaction"; and to construe ambiguity "against the drafter of the agreement." The jury was instructed to apply these rules "to determine which view is correct and whether Defendant Goddard Ranch, LLC is permitted to construct its barbed wire fences and gates in and across the Platted Easements."

[¶67] After the district court reached the legal conclusion the Amended Covenants were ambiguous and denied Appellants' summary judgment, there was no additional evidence that could have had a bearing on that decision and there was no likelihood that renewed argument would have caused the district court judge to change his mind. Therefore, the majority's insistence on a Rule 50 motion to preserve the issue does nothing more than create an obstacle to appeal. I would consider SCRPA and JCRI's appeal of the portion of the district court's denial of their motion for summary judgment that was based on its purely legal conclusion.